# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | | |
|---|---|---|
| In re | : | Case No. 12-12013 |
| | : | |
| **LOUISIANA RIVERBOAT GAMING** | : | **Chapter 11** |
| **PARTNERSHIP,** *et al.*[1] | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

---

| | | |
|---|---|---|
| **GLOBAL GAMING LEGENDS, LLC,** | : | **Adversary No. 13-1007** |
| *et al.*[2] | : | |
| | : | |
| | : | **CONSOLIDATED WITH** |
| **v.** | : | |
| | : | |
| **LEGENDS GAMING OF LOUISIANA-1,** | : | **Adversary No. 13-1008** |
| **LLC,** *et al.* | : | |

---

## DEFENDANTS' MOTION TO DISMISS

### (with Incorporated Memorandum of Law)

---

[1]    Legends Gaming of Louisiana-1, LLC (12-12014); Legends Gaming of Louisiana-2, LLC (12-12015); Legends Gaming, LLC (12-12017); Legends Gaming of Mississippi, LLC (12-12019); and Legends Gaming of Mississippi RV Park, LLC (12-12020) are being jointly administered with Louisiana Riverboat Gaming Partnership pursuant to order of this Court [Main Case, P–6].

[2]    Plaintiffs are Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Bossier City, LLC, purchasers under the APA (defined below), and Global Gaming Solutions, LLC (collectively with Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global Gaming Bossier City, LLC, "Global"), guarantor under the APA.

<u>**TABLE OF CONTENTS**</u>

**Page**

Table of Authorities ...................................................................................................... ii

INTRODUCTION ........................................................................................................ 1

PROCEDURAL HISTORY............................................................................................ 2

STATEMENT OF FACTS ............................................................................................. 3

A.     The Global Sale............................................................................................... 3

B.     The Debtors' Representations and Warranties Under the APA.......................... 3

C.     The Disclaimers In The APA............................................................................ 4

D.     The Bankruptcy Proceedings ........................................................................... 5

        1.     The August 22, 2012 Hearing ................................................................ 5

        2.     The October Disclosure Statement and Plan ........................................... 6

        3.     The Amendment to the APA and the  November Disclosure Statement and Plan . 7

E.     Global's Complaint........................................................................................ 10

        1.     The Fraud Claim ................................................................................. 10

        2.     The Breach of Contract Claim .............................................................. 11

ARGUMENT ............................................................................................................. 11

I.     Governing Legal Standards............................................................................ 11

II.     Global's Fraud Claim Fails As A Matter of Law. ........................................... 13

        A.     The Fraud Claim Is Duplicative of the Breach of Contract Claim. ..................... 13

        B.     The Disclaimers In The APA And The Amendment Bar Reliance On The Debtors' Purported Extracontractual Representations.......................................... 14

        C.     The November Financial Projections Are Not Actionable Representations. ....... 16

        D.     Global Could *Not* Have Been Fraudulently Induced By The  Debtors' Alleged Failure To Disclose Events That Postdated The APA. ......................................... 20

III.     Global's Breach of Contract Claim Fails As A Matter of Law. ....................... 21

        A.     The APA Does Not Impose A Minimum CapEx Amount. ................................. 21

CONCLUSION........................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABF Capital Mgmt. LP v. Askin Capital Mgmt., LP,*
    957 F. Supp. 1308 (S.D.N.Y.1997)..........................................................................17

*Alexander v. Evans,*
    No. 88 Civ. 5309 (MJL), 1993 WL 427409 (S.D.N.Y. Oct. 15, 1993) ...................18

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.,*
    98 F.3d 13 (2d Cir. 1996).........................................................................................13

*Brockman v. Friedberg,*
    194 A.D.2d 393 (1st Dep't 1993) ............................................................................18

*Buckman v. Calyon Secs. (USA) Inc.,*
    817 F. Supp.2d 322 (S.D.N.Y.2011).......................................................................17

*Chase v. N.H. Ins. Co.,*
    304 A.D.2d 423 (1st Dep't 2003) ............................................................................15

*Collins v. Morgan Stanley Dean Witter,*
    224 F.3d 496 (5th Cir. 2000) ...................................................................................11

*Crane Co. v. Coltec Indus. Inc.,*
    171 F.3d 733 (2d Cir. 1999).....................................................................................22

*Dannan Realty Corp. v. Harris,*
    5 N.Y.2d 317 (1959) ...................................................................................14, 15, 16

*Drexel Burnham Lambert Inc. v. Saxony Hgts. Realty Assoc.,*
    777 F. Supp 228 (S.D.N.Y. 1991) ..........................................................................13

*Dyncorp v. GTE Corp.,*
    215 F. Supp. 2d 308 (S.D.N.Y. 2002)................................................................12, 15

*Epirus Capital Mgt., LLC v. Citigroup Inc.,*
    Civ. 09 No. 2594 (SHS), 2010 WL 1779348 (S.D.N.Y. Apr. 29, 2010).................18

*Fin. Structures Ltd. v UBS AG,*
    77 A.D.3d 417 (1st Dep't 2010) .........................................................................13, 14

*First Inter-County Bank v. DeFilippis,*
    160 A.D.2d 288 (1st Dep't 1990) ............................................................................20

*Global Energy & Mgmt., LLC v. Xethanol Corp.,*
    No. 07 Civ. 11049(NRB), 2009 WL 464449 (S.D.N.Y. Feb. 24, 2009) ................................17

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,*
    313 F.3d 305 (5th Cir. 2002) ................................................................................................12

*Harsco Corp. v. Segui,*
    91 F.3d 337 (2d Cir. 1996) ............................................................................................14, 21

*HSH Nordbank AG v. UBS AG,*
    95 A.D.3d 185 (1st Dep't 2012) ..........................................................................................16

*In re Chason*,
    352 B.R. 52 (Bankr. W.D. La. 2005) .......................................................................11, 12, 14

*Innophos, Inc. v. Rhodia, S.A.*,
    10 N.Y.3d 25 (2008) ....................................................................................................21, 22

*JBC Holdings NY, LLC v. Pakter*,
    No. 12 Civ. 7555 (PAE), 2013 WL 1149061 (S.D.N.Y Mar. 20, 2013) ................................17

*Kaye v. Lone Star Fund V (U.S.), L.P.,*
    453 B.R. 645 (Bankr. N.D. Tex. 2011) ................................................................................12

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.,*
    821 F. Supp. 2d 616 (S.D.N.Y. 2011) ................................................................................18

*Mass. Mut. Life Ins. Co. v. Thorpe,*
    260 A.D.2d 706 (3d Dep't 1999) .................................................................................21, 22

*Mathai v. Bd. of Supervisors of La. State Univ.,*
    Civ. No. 12-2778, 2013 U.S. Dist. LEXIS 99803 (E.D. La. July 17, 2013).....................11, 12

*MBIA Ins. Corp. v. Lynch*,
    81 A.D.3d 419 (1st Dep't 2011) ..........................................................................................14

*Nurnberg v. Hobo*,
    30 A.D.3d 359 (1st Dep't 2006) ....................................................................................12, 19

*Sands v. McCormick,*
    502 F.3d 263 (3d Cir. 2007).................................................................................................12

*State Bank of India v. Walter E. Heller & Co., Inc.*,
    655 F.Supp. 326 (S.D.N.Y.1987) .................................................................................21, 22

*Stine v. Nafziger,*
    Civ. No. 07-cv-02203-WYD-KLM, 2009 U.S. Dist. LEXIS 78501 (D. Colo. July 9,
    2009) ....................................................................................................................................12

*Strojmaterialintorg v. Russian Am. Commercial Corp.,*
   815 F. Supp. 103 (E.D.N.Y. 1993) ........................................................................13

*Sudul v. Computer Outsourcing Services,*
   868 F. Supp. 59 (S.D.N.Y. 1994) ........................................................................13

*Vista Co. v. Columbia Pictures,*
   725 F. Supp. 1286 (S.D.N.Y. 1989)........................................................................13

## OTHER AUTHORITIES

Fed. R. Bankr. P. 7009 ........................................................................................12

Fed. R. Bankr. P. 7012 ........................................................................................1

Fed. R. Civ. P. 9(b) ........................................................................................12, 14

Fed. R. Civ. P. 12(c) ........................................................................................1, 11, 24

**NOW INTO COURT**, through undersigned counsel, come Louisiana Riverboat Gaming Partnership, Legends Gaming, LLC, Legends Gaming of Mississippi-1, LLC, Legends Gaming of Mississippi-2, LLC, Legends Gaming of Mississippi, LLC, as debtors and debtors-in-possession (excluding Legends Gaming of Mississippi RV Park, LLC, the "Debtors" or "Legends") who respectfully submit this memorandum in support of Legends' motion to dismiss the fraudulent inducement and breach of contract causes of action in Global Gaming, LLC's First Amended Complaint [P–49] (the "Motion") pursuant to Fed. R. Civ. P. 12(c) and Fed. R. Bankr. P. 7012.  For the reasons set forth below, the Motion should be granted.

## INTRODUCTION

In yet another cynical maneuver to evade its contractual obligations to the Debtors, Global, a sophisticated entity operating numerous casinos, including the second largest casino in the world, claims that the Debtors fraudulently induced it to enter into that certain Asset Purchase Agreement dated July 25, 2012, as amended (the "APA") to purchase the Debtors' gaming businesses.  Global claims that the Debtors allegedly misrepresented their financial projections and failed to disclose their financial deterioration to induce Global to pay an inflated price.  Global also maintains that the Debtors did not make required capital expenditures ("CapEx") under the APA.  Not only are Global's claims belied by Global's own admissions and the plain language of the APA, but Global's arguments fail as a matter of law.

In the APA, Global agreed that any "claims [Global] may have for breach of Representation shall be based solely on the representations and warranties of the [Debtors] set forth in this Agreement."  Moreover, the APA includes a merger clause barring claims based on extracontractual promises, and disclaimers of any extracontractual warranties.  Indeed, the assets were to be sold on an "as is" basis, "with all faults."

Under New York law, which is controlling in this case, and based on the clear and unambiguous text of the APA, Global's fraud claim fails. By Global's own admission, the APA includes none of the representations, warranties or requirements on which Global relies. Global, in effect, attempts to rewrite the APA and Amendment (defined below) by adding additional requirements and terms and deleting other key provisions of the APA. Accordingly, the Court should dismiss Global's fraudulent inducement and breach of contract claims with prejudice.

## PROCEDURAL HISTORY

On February 4, 2013, Global filed an *Original Complaint for Declaratory Judgment* [P–1] against the Debtors, seeking a declaration that the Debtors, not Global, breached the APA and that Global was relieved of all of its contractual obligations under the APA. On February 6, 2013, the Debtors filed a *Complaint for Breach of Contract* ("Debtors' Original Complaint") [Adv. Pro. No. 13-1008, P–1] against Global, seeking damages for Global's breach and repudiation of the APA in an amount to be determined at trial. The Debtors further requested that they be awarded the $6.25 million escrow deposit.

On March 25, 2013, Global filed a motion to dismiss the Debtors' Original Complaint and the Debtors' Counterclaim [P–20], which was filed by the Debtors on March 11, 2013. Following a hearing on the motion, on April 12, 2013, the Court denied Global's motion to dismiss and entered an order [P–43] consolidating adversary proceeding numbers 13-01007 and 13-01008.

On April 19, 2013, the Debtors filed their *First Amended Complaint for Breach of Contract* [P–46]. Global filed their *Answer and Counterclaim to First Amended Complaint for Breach of Contract* [P–47] and *Amended Answer to First Amended Complaint for Breach of Contract* [P–50] ("Global's Answer").

2

On May 24, 2013, Global filed Global Gaming's *First Amended Complaint* [P–49] ("FAC") asserting claims for breach of contract and fraud in the inducement.

## STATEMENT OF FACTS

### A.    The Global Sale

After a year of negotiations and due diligence by Global, the Debtors and Global entered into the APA on July 25, 2012.  (Global's Answer to the FAC, ¶¶ 4, 6, 18, 19.)  Global's extensive due diligence included onsite visits to the Debtors' businesses.  (*Id.*, ¶ 19.)  Under the APA, Global agreed to purchase substantially all of the Debtors' assets for the aggregate price of $125 million ("Global Sale") and to assume certain of the Debtors' liabilities. (APA, § 2.) Global deposited $6.25 million in escrow and in reliance on the APA, the Debtors immediately commenced their bankruptcy cases to consummate the Global Sale.  (Global's Answer to the FAC, ¶¶ 6, 8.)

### B.    The Debtors' Representations and Warranties Under the APA

Section 4.1 of the APA contains the only representations and warranties made by the Debtors.  Notably, the APA does not contain any representations or warranties concerning the financial performance of the Debtors, the Debtors' EBITDA or any other financial benchmarks. Significantly, and contrary to Global's current representations to the Court, the APA does not contain any requirements or representations for the Debtors to make any CapEx at all.  A $100,000.00 monthly minimum CapEx was first inserted in the November 29, 2012, First Amendment to the APA (the "Amendment").

In addition, the APA specifically provides that the Debtors' failure to meet any financial projections is not a "Material Adverse Effect" that would relieve Global of its obligations under the APA or Amendment.  The APA *excludes* "general changes in the industries or markets in which the Legend Entities operate the business" and "any failure by the Legends Entities to meet

3

any internal or published industry analysis projections or forecast or estimates of revenues or earnings for any period" from the definition of a Material Adverse Effect, the occurrence of which would excuse Global from its obligation to close under the APA.  (APA, §§ 1.1 & 7.1(h).)

##### C.  The Disclaimers In The APA

Section 10.1 of the APA expressly provides that the Debtors' assets were being transferred on an "as is" and "where is" basis "with all faults."  Under that same provision, Global agreed that it had "adequate opportunities to conduct an independent inspection [and] investigation" of the assets and all such matters "relating to or affecting the assets" and that any "claims [Global] may have for breach of Representation shall be based *solely* on the representations and warranties of the [Debtors] set forth in this Agreement."  (*Id.*, § 10.1(a) (emphasis added).)

Section 10.1(a) of the APA further makes clear that "EXCEPT AS SET FORTH IN THIS AGREEMENT, THE LEGENDS ENTITIES MAKE NO EXPRESS WARRANTY, NO WARRANTY OF MERCHANTABILITY, NO WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, NOR ANY IMPLIED OR STATUTORY WARRANTY WHATSOEVER (AND EXPRESSLY DISCLAIM ALL SUCH WARRANTIES)" with respect to any of the assets.  (*Id.* (emphasis in original).)

Section 10.10 of the APA provides that the APA constituted "the full and entire agreement between [the Debtors and Global] . . . and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, with respect thereto made by any Party . . . and there are no other warranties or representations and no other agreements between the Parties . . . except as specifically set forth in this Agreement."  (*Id.*, § 10.10.)

4

### D.   The Bankruptcy Proceedings

The Debtors commenced their bankruptcy proceedings on July 31, 2012 as required by the APA.  (Global's Answer to the FAC, ¶ 5, 11.)

#### 1.   The August 22, 2012 Hearing

On August 22, 2012, the Court heard the Debtors' motion seeking approval of bidding procedures and protections.  (Global's Answer, ¶¶ 8, 30.)  As the Court may recall, during the hearing on the bidding procedures, Global represented itself as a sophisticated party capable of exploiting its "synergies" and vast financial resources, experience, management skills and talented advisors and consultants and employees to maximize the value of the Debtors' business. (Transcript, 47:1–5.)  In addition, by its own admission, Global expended "more than a year" in performing due diligence in investigating the Debtors' operations and finances before entering into the APA.  (*Id.* at 47:12–18.)

At the August 22, 2012 hearing, Eben Perison,[3] the Debtors' financial advisor, testified that the "revenue and EBITDA for Legends over the last three years has decreased dramatically and has been declining."  (*Id.* at 10:21–22.)  Mr. Perison further disclosed that "the market's been substantially more competitive.  And as a result, with the decreasing EBITDA performance, [the Debtors] haven't had the capital to reinvest into CAPX into the business."  (*Id.* at 12:14–17 (emphasis added).)

During the hearing, Global's CEO, Mr. Elliott, acknowledged that the APA did not contain any downward adjustment in purchase price "in the event of decreasing EBITDA or other performance measures or metrics prior to closing" and that the escrow deposit was structured such that Global is "in effect locked in unless it wants to lose" that deposit.  (*Id.* at

---

[3]     The Transcript incorrectly refers to Eben Perison as "Evan Paul Harrison." (Transcript, 9:9–21.)

48:8–16.)  Mr. Elliott further proffered that he was "integrally involved with extensive due diligence performed by Global Gaming over a period of more than a year" and "was integrally involved with negotiations in the purchase price agreed to," which involved documents that are and will be publicly available during the bidding process."  (*Id.* at 47:12–23.)  Mr. Elliott made these statements in support of the Debtors' motion, which sought the Bankruptcy Court's approval for bidding procedures that Global Gaming wanted, including a significant break-up fee.

Following Mr. Perison and Mr. Elliott's testimony, the Court stated: "We're coming into the bankruptcy with a hard, fast offer.  We were coming into the bankruptcy with a hard, fast offer from a recognized player in the gaming industry who should, without any difficulty, if they are the successful purchasing party, be qualified, certified, and these casinos will continue to operate.  The market is and has been unstable for a period of time.  There are things that are going on in the Shreveport-Bossier City market that cause concern.  Global is well aware of these potential problems, and nonetheless has made a hard, fast offer and started the process." (*Id.* at 72:4–16.)

2.      The October Disclosure Statement and Plan

On October 26, 2012, the Debtors filed the *Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as of October 26, 2012* [Main Case, P–248] and *Joint Disclosure Statement for Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as of October 26, 2012* [Main Case, P–249] (the "Disclosure Statement").  The Disclosure Statement did not include any financial projections.

3.    The Amendment to the APA and the
      November Disclosure Statement and Plan

As a result of Global once again seeking to renegotiate and avoid its contractual obligations to the Debtors under the APA, on November 29, 2012, Global and the Debtors executed the Amendment.  (Global's Answer, ¶ 9.)  The Amendment required the Debtors to make minimum monthly capital expenditures through closing but, like the APA, did not require the Debtors to maintain a minimum EBITDA or provide for other such financial benchmarks. Section 10 of the Amendment specifically provided that "[e]xcept as specifically stated herein, all terms, covenants and conditions of the [APA] shall remain in full force and effect." (Amendment, § 10.)  The Amendment, for the first time, set a minimum level of capital expenditures to be made by the Debtors ($100,000 per month) pending closing and confirmation. (*Id.*, § 6.)

On November 29, 2012, the Debtors filed the *Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012* ("Amended Plan") [Main Case, P–290] and the *Joint Disclosure Statement for the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012* [Main Case, P–291] ("Amended Disclosure Statement"), which disclosed the Amendment to the APA and included the Debtors' financial projections (the "November Financial Projections") for the first time.  (Global's Answer, ¶¶ 37–38.)  The Amended Disclosure Statement specifically provided:

> THIS DISCLOSURE STATEMENT CONTAINS PROJECTED FINANCIAL INFORMATION REGARDING THE DEBTORS AND CERTAIN OTHER FORWARD-LOOKING STATEMENTS, ALL OF WHICH ARE BASED ON VARIOUS ESTIMATES AND ASSUMPTIONS AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF.  SUCH INFORMATION AND STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A

7

WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS, INCLUDING, AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD-LOOKING STATEMENTS. CONSEQUENTLY, THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING STATEMENTS CONTAINED HEREIN SHOULD NOT BE REGARDED AS REPRESENTATIONS BY THE DEBTORS OR ANY OTHER PERSON THAT THE PROJECTED FINANCIAL CONDITION OR RESULTS WILL BE ACHIEVED. . . .

THE FINANCIAL PROJECTIONS, ATTACHED HERETO AS **EXHIBIT D-2,** WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS WHICH, THOUGH CONSIDERED REASONABLE, MAY NOT ULTIMATELY BE REALIZED, AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL. THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE PROJECTIONS OR TO THE ABILITY TO ACHIEVE THE PROJECTED RESULTS. . . .

SOME ASSUMPTIONS MAY NOT MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THE FINANCIAL PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED OR, ALTERNATIVELY, MAY HAVE BEEN UNANTICIPATED, AND, THUS, THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THEREFORE, THE FINANCIAL PROJECTIONS DO NOT CONSTITUTE, AND SHALL NOT BE CONSTRUED AS, A GUARANTEE OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

(*See* Amended Disclosure Statement, at D–2–D–3.)

8

In addition, the first paragraph of the November Financial Projections included the following explicit caveat:

> These financial projections (the "Financial Projections") present, to the best of the Debtors' knowledge and belief, the expected financial position, results of operations and cash flows of the Assets for the projection period. The assumptions disclosed herein are those that the Debtors believe are significant to the Financial Projections. Because events and circumstances frequently do not occur as expected, there will be differences between the projected and actual results. These differences may be material to the Financial Projections herein.

Prior to filing, the Debtors and their financial advisors provided Global and Global's financial advisors with drafts of the Amended Plan and Amended Disclosure Statement, including the November Financial Projections, and Global consented to the filing of the documents and approved their content. (Global's Answer, ¶¶ 37–39.)

On December 6, 2012, the Court entered the *Order Approving Joint Disclosure Statement for the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012 and on Matters Related Thereto* [Main Case, P–300] ("Disclosure Statement Order"), approving the Amended Disclosure Statement and scheduling the confirmation hearing on the Amended Plan for February 6, 2013. (Global's Answer, ¶¶ 40–41.) Global's counsel fully participated in the Amended Disclosure Statement hearing. (Global's Answer, ¶ 40.)

On December 20, 2012, just two weeks after supporting approval of the Amended Disclosure Statement, Global, in violation of the APA, and in an effort to escape its obligations, filed the *Motion to Vacate the Disclosure Statement Order* [Main Case, P–313] ("Motion to Vacate"), alleging that the Amended Disclosure Statement did not contain adequate financial information, that the Amended Plan was not feasible, and that the Global Sale "cannot be closed" under the terms of the APA. (Global's Answer, ¶¶ 14, 44; Motion to Vacate at 7.) In that

9

motion, Global requested an Order vacating the Amended Disclosure Statement and adjourning the confirmation hearing indefinitely. In response, the Debtors requested that they be allowed to supplement the Amended Disclosure Statement. The Court entered an order denying the Motion to Vacate and approving the *Supplement* to the *Joint Disclosure Statement for the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012* [P–327].

On January 25, 2013, Global, again in violation of the APA and in order to escape its contractual obligations, filed *Global Gaming's Objection to the Joint Chapter 11 Plan for Louisiana Riverboat Gaming Partnership and Affiliates as Amended Through November 29, 2012 [Dkt. No. 462]* [Main Case, P–353] in which it asked the Court to deny confirmation of the Amended Plan. On January 30, 2013, the Debtors exercised their contractual right under the APA and terminated the APA and withdrew the Amended Plan [Main Case, P–360].

    **E.**    **Global's Complaint**

        1.    The Fraud Claim

Global alleges that the Debtors intentionally and knowingly provided Global Gaming with false financial projections "prior to and after execution of the APA and the amendment" (FAC, ¶ 9), including "materially false information regarding EBITDA projections in its Disclosure Statement and Amended Disclosure Statement. (FAC, ¶ 11.) Global further alleges that the Debtors' failure to disclose updated, financial projections and "the attendant financial collapse in the fourth quarter of 2012 that was known to the Debtors but misrepresented in the Disclosure Statement" constitute fraudulent omissions. (FAC, ¶¶ 11, 17, 42, 45.) [4]

---

[4]    Global makes the allegations despite the inescapable fact that Global executed the APA three months *prior* to the Debtors' Disclosure Statement and four months *prior* to the Debtors' Amended Disclosure Statement, which Global approved prior to filing. Further, as Global explicitly acknowledged during the August 22, 2012 hearing when it was trying to obtain a break-up fee, Global clearly assumed all risks of the Debtors' declining financial performance.

In addition, Global alleges that the Debtors never intended to continue to comply with their obligations under the APA to operate in the ordinary course of business and "perform the condition precedent concerning feasibility and confirmation." (FAC, ¶¶ 22, 44, 46.) Global bases these allegations on the Debtors' alleged failure to make required CapEx. The APA, however, contains no minimum CapEx requirements.

### 2. The Breach of Contract Claim

Global alleges that the Debtors failed to maintain the assets "in the ordinary course of business" in breach of the APA by not making sufficient CapEx. (FAC, ¶¶ 3, 7, 8, 32-37.) Although the Amendment contains a CapEx requirement, Global's claim is not based on the Amendment because Global alleges that the Debtors breached their obligations by not making sufficient CapEx from July 2012 – October 2012, and the Amendment was not executed until November 29, 2012. Thus, Global's breach of contract claim can be based upon *only* the APA. However, the APA contains no representations or requirement for minimum CapEx.

## ARGUMENT

### I. Governing Legal Standards

"A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *In re Chason*, 352 B.R. 52, 56 (Bankr. W.D. La. 2005) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990) (*per curiam*)).[5] A court may dismiss a claim when it is clear, on

---

[5]     Although a court's review of a motion to dismiss for failure to state a claim is limited "to the contents of the pleadings, including their attachments," it may nonetheless "consider documents attached to a motion to dismiss without converting it to a summary judgment motion" as long as "the documents are referred to in the complaint and are central to the plaintiff's claim." *Mathai v. Bd. of Supervisors of La. State Univ.*, Civ. No. 12-2778, 2013 U.S. Dist. LEXIS 99803, at *9 (E.D. La. July 17, 2013); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Therefore, on a motion under 12(b)(6) or 12(c), as is the case here, "uncontested documents referred to in the pleadings may be considered by the court without converting the motion to one for summary

the face of the pleadings and documents incorporated in or attached to or referred to in the pleadings—such as the APA in the instant case—that the plaintiff does not have a valid claim that would entitle him to relief. *See In re Chason*, 352 B.R. at 56 (citing *Conley v. Gibson*, 355 U.S. 41, 45 (1957)).[6] In addition, allegations of fraud must satisfy the particularity requirement of Federal R. of Civ. P 9(b). *In re Chason*, 352 B.R. at 57. That is, the complaint must allege "precisely what statements or omission were made, place and person responsible for those statements, the content of the statements and the effect on the plaintiff." *Id.*

The APA and Amendment are governed by the "laws of the State of New York." (APA, § 10.8; Amendment, § 11.18.) To state a common law claim for fraudulent inducement under New York law, a plaintiff must adequately plead: (i) a material representation of fact; (ii) known to be false; (iii) made with the intention to induce reliance; (iv) actual reliance; and (v) injury or damage. *Nurnberg v. Hobo*, 30 A.D.3d 359, 360 (1st Dep't 2006). Applying these standards, Global's fraudulent inducement cause of action should be dismissed with prejudice.[7]

---

judgment, even when the documents are not physically attached to the complaint." *Mathai*, 2013 U.S. Dist. LEXIS 99803 at *9; *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 n.16 (Bankr. N.D. Tex. 2011) ("Because such documents are considered part of the pleadings, they are not matters outside the pleadings that trigger conversion to a motion for summary judgment under Rule 12.") (internal quotation marks omitted).

[6]     *See also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) ("the district court 'look[s] to the substance of the pleadings *and any judicially noticed facts*'") (quoting *Hebert Abstract Co. v. Touchstone Props.*, 914 F.2d 74, 76 (5th Cir. 1990) (emphasis in original)). This Court may take judicial notice of the testimony previously given before this Court during an August 22, 2012 hearing, in which Global indicated its knowledge about the Debtors' declining EBITDA in advance of the APA's execution. *See Sands v. McCormick*, 502 F.3d 263, 265 (3d Cir. 2007) ("we conclude that portions of a transcript of a preliminary hearing may be considered in connection with the defendants' motion to dismiss"); *Stine v. Nafziger*, Civ. No. 07-cv-02203-WYD-KLM, 2009 U.S. Dist. LEXIS 78501, at *2 (D. Colo. July 9, 2009) ("[The Court] may take judicial notice of the evidence and testimony presented at the public hearing which is equally relevant to [the court's] adjudication of the present Motions in this case.") (citing *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)).

[7]     Rule 7009 of the Federal Rules of Bankruptcy Procedure require that fraud be pled with specificity. A party pleading fraud cannot make a general allegation of fraud and then argue that it must conduct discovery to determine the specifics. *See Dyncorp v. GTE Corp.*, 215 F. Supp. 2d 308, 320 (S.D.N.Y. 2002) ("And the ruling on the legal sufficiency of a complaint based on such representations may properly be made on the complaint and contract alone, without waiting for discovery.").

## II.    Global's Fraud Claim Fails As A Matter of Law

### A.    The Fraud Claim Is Duplicative of the Breach of Contract Claim

Global alleges that it was fraudulently induced by the Debtors to execute the APA based on the allegedly false representations that it would continue to operate in the ordinary course of business and "perform the condition precedent concerning feasibility and confirmation." (FAC, ¶¶ 22, 44, 46.)  Global makes these same allegations in its breach of contract claim. (FAC, ¶¶ 33-35, 37.)

A "contract dispute [cannot be] dressed up in the language of fraud."  *Drexel Burnham Lambert Inc. v. Saxony Hgts. Realty Assoc.,* 777 F. Supp 228, 235 (S.D.N.Y. 1991).  Thus, a fraud claim fails as a matter of law where, as here, the only fraud alleged consists of the chimerical breach of a contract between the parties.  *See Bridgestone/Firestone, Inc. v.  Recovery Credit Services, Inc.,* 98 F.3d 13, 19 (2d Cir. 1996); *Fin. Structures Ltd. v UBS AG*, 77 A.D.3d 417, 419 (1st Dep't 2010); *Sudul v. Computer Outsourcing Services,* 868 F. Supp. 59, 62 (S.D.N.Y. 1994).  Under New York law, "where a fraud claim arises out of the same facts as plaintiff's breach of contact claim, with the addition only of an allegation that defendant never intended to perform the [contractual terms], the fraud claim is redundant and plaintiff's sole remedy is for breach of contract."  *Sudul,* 868 F. Supp. at 62 (dismissing fraud claim predicated on defendant's alleged misrepresentation of its intent to perform under the contract); *Strojmaterialintorg v. Russian Am. Commercial Corp.,* 815 F. Supp. 103, 105 (E.D.N.Y. 1993) (same); *Vista Co. v. Columbia Pictures,* 725 F. Supp. 1286, 1294 (S.D.N.Y. 1989) (same); *Fin. Structures*, 77 A.D.3d at 419 (1st Dep't 2010) (same).

Here, Global's claims for breach of contract and fraud are both predicated on the allegation that the Debtors did not operate in the ordinary course of business or "perform the condition precedent concerning feasibility and confirmation."  (*Compare* FAC, ¶¶ 22, 44, 46

13

*with* FAC, ¶¶ 33, 37–38.) Because the only distinction between the two claims is that the fraud claim adds an allegation that the Debtors had no intent to perform, the fraud claim should be dismissed as a matter of law. *Fin. Structures*, 77 A.D.3d at 419.[8] For the reasons set forth in Section III, *infra*, Global's claim for breach of contract also fails as a matter of law.

### B. The Disclaimers In The APA And The Amendment Bar Reliance On The Debtors' Purported Extracontractual Representations[9]

"[R]eliance must be found to be justifiable under all the circumstances before a complaint can be found to state a cause of action in fraud." *Dannan Realty Corp. v. Harris*, 5 N.Y.2d 317, 322 (1959). In this case, the specific disclaimers in the APA and the Amendment negate any allegation of reliance by Global on the November Financial Projections (or any extracontractual representations for that matter) as a matter of law. Not only did the APA and the Amendment not contain *any* covenants, warranties or representations concerning the Debtors' current or projected EBITDA or CapEx, but the Debtors expressly rejected, and Global expressly agreed to disclaim reliance upon, any such representations. (APA, §§ 10.1(a) & 10.10.)

New York law unequivocally bars sophisticated parties from asserting claims based on specific disclaimers in a contract. *Dannan*, 5 N.Y.2d at 320-21 (dismissing purchaser's fraud claim on the pleadings because purchase agreement contained specific disclaimer); *MBIA Ins. Corp. v. Lynch*, 81 A.D.3d 419, 419 (1st Dep't 2011) (same); *see also Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996) ("where a party specifically disclaims reliance upon a particular

---

[8] Similarly, Global's allegation that the Debtors did not intend to perform under the APA is a "misrepresentation of future intent rather than a misrepresentation of present fact, which is not sustainable as a cause of action separate from breach of contract." *Fin. Structures Ltd. v UBS AG*, 77 A.D.3d 417, 419 (1st Dep't 2010).

[9] In any event, the claim predicated on allegedly false projections fails under Rule 9(b) because it does not allege "precisely what statements or omission were made, place and person responsible for those statements, the content of the statements and the effect on the plaintiff." *In re Chason*, 352 B.R. 52, 57 (Bankr. W.D. La. 2005). Here, the Debtors have no way of knowing who allegedly communicated the "false projections" to Global, the content of the representations or even when the representations took place.

representation in a contract, that party cannot, in a subsequent action for common law fraud, claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon"); *Chase v. N.H. Ins. Co.,* 304 A.D.2d 423, 424 (1st Dep't 2003) ("[F]raud claims cannot be brought by a contracting party who specifically disclaimed reliance on extracontractual representations.). "Such a specific disclaimer destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations." *Dannan*, 5 N.Y.2d at 320-21 (citing *Cohen v. Cohen*, 1 A.D.2d 586 (1st Dep't 1956)). Indeed, "[s]ophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties." *Dyncorp. v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002).[10]

In *Dannan Realty*, a purchaser of a lease alleged that he was fraudulently induced to enter into the purchase agreement based on the seller's misrepresentations concerning expenses and profit projections. 5 N.Y.2d at 319. In dismissing the claim, the New York Court of Appeals held that the purchaser was barred from properly asserting justifiable reliance because the agreement contained a merger clause and specific disclaimer that the purchaser was not relying on representations not contained in the agreement. *Id.* at 320–21. The court stated: "To hold otherwise would be to say that it is impossible for two businessmen dealing at arm's length to agree that the buyer is not buying in reliance on any representations of the seller as to a particular fact." *Id.* at 323.

---

[10]     Further, in the merger clause in Section 10.10 of the APA, Global expressly agreed that "there are no other warranties or representations and no other agreements between the Parties . . . except as specifically set forth in this Agreement." (APA, § 10.10.) Thus, Global's fraud claim cannot be predicated upon any alleged representations or warranties by the Debtors concerning their current or future financial condition—including projections about their EBITDA filed as part of the their Disclosure Statements. *Dannan*, 5 N.Y.2d at 323.

15

Here, the Debtors likewise disclaimed extracontractual representations. In Section 10.1(a) of the APA, the Debtors expressly disclaimed any warranties—including any express warranty, warrant of merchantability, warranty of fitness for a particular purpose, implied warranty or statutory warranty—aside from those expressly set forth in the APA. And Section 10.1(a) is unequivocal that "any claims [Global] may have for breach of Representation shall be based solely on the Representations and warranties of the [Debtors] as set forth" in the APA. (APA, § 10.1(a).) The Amendment incorporated this same provision by reference. (Amendment, § 10.) These specific disclaimers belie any claim of fraudulent inducement by Global based on any representations *not* included in the APA.

Any claim by Global based upon the Debtors' extracontractual representations is barred by the specific disclaimers in the APA and the Amendment. Indeed, to permit Global to sue the Debtors "for fraud based on extracontractual representations . . . would in effect condone [Global's] own fraud in deliberately misrepresenting its true intention when it disclaimed reliance on any such representations at the time of contracting." *HSH Nordbank AG v. UBS AG,* 95 A.D.3d 185, 201 (1st Dep't 2012) (internal quotation marks omitted); *see also Dannan*, 5 N.Y.2d at 323 ("If the plaintiff has made a bad bargain he cannot avoid it in this manner.").

Global could have insisted on additional representations and warranties. Instead, Global accepted the Debtors' assets "as is" and "with all faults." Thus, Global cannot now evade the terms of its bargain by claiming fraud.

### C.      The November Financial Projections Are Not Actionable Representations

Even if Global could claim that its alleged reliance on the Debtors' extracontractual representations was justifiable—and New York law is clear that it cannot—the fact that the November Financial Projections were forward-looking statements also precludes Global's reliance on them. First, financial projections are precisely the type of forward-looking

16

statements that cannot sustain a fraud claim. *JBC Holdings NY, LLC v. Pakter*, No. 12 Civ. 7555 (PAE), 2013 WL 1149061, at *14 (S.D.N.Y Mar. 20, 2013) ("projections about anticipated revenue are the type of forward-looking statements that generally do not state a claim of fraud")*; Buckman v. Calyon Secs. (USA) Inc.,* 817 F. Supp.2d 322, 334 (S.D.N.Y.2011) ("[S]tatements will not form the basis of a fraud claim when they are mere 'puffery' or opinions as to future events.") (quoting *Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir. 1994)); *Global Energy & Mgmt., LLC v. Xethanol Corp.,* No. 07 Civ. 11049(NRB), 2009 WL 464449, at *3 (S.D.N.Y. Feb. 24, 2009) (forward-looking statements not actionable); *ABF Capital Mgmt. LP v. Askin Capital Mgmt., LP,* 957 F. Supp. 1308, 1324 (S.D.N.Y.1997) ("[B]ad forecasting alone is not actionable.").

If there were any doubt on the matter, the November Financial Projections contained clear, unequivocal disclaimers informing Global that they were just that—projections. The first paragraph of the November Financial Projections included the following explicit caveat that the "assumptions disclosed herein are those that the Debtors believe are significant to the Financial Projections. Because events and circumstances frequently do not occur as expected, there will be differences between the projected and actual results. These differences may be material to the Financial Projections herein." (*See* Financial Projections in the Amended Disclosure Statement.)

Further, the Amended Disclosure Statement provided even more specific disclaimers that the disclosure statement contained financial projections and certain forward-looking statements that are "SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT BUSINESS, ECONOMIC, AND COMPETITIVE RISKS . . . AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY

SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD-

LOOKING STATEMENTS."

In addition, the Amended Disclosure Statement specifically put Global on notice that

Global could not rely on the projections as representations by the Debtors: "CONSEQUENTLY,

THE PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD-LOOKING

STATEMENTS CONTAINED HEREIN SHOULD NOT BE REGARDED AS

REPRESENTATIONS BY THE DEBTORS OR ANY OTHER PERSON THAT THE

PROJECTED FINANCIAL CONDITION OR RESULTS WILL BE ACHIEVED."

(*See* Amended Disclosure Statement, at D–2–D–3.)

As discussed *supra*, such specific disclaimers belie any claim for fraud in reliance

thereon. Indeed, numerous precedents under New York law weigh "against claims of fraud

based on financial projections where, as here, projections are accompanied by provisos that

'bespeak caution.'" *Alexander v. Evans*, No. 88 Civ. 5309 (MJL), 1993 WL 427409, at *7

(S.D.N.Y. Oct. 15, 1993); *Brockman v. Friedberg*, 194 A.D.2d 393, 394 (1st Dep't 1993)

(dismissing fraud claim predicated on valuation projections with a specific disclaimer that the

assessed valuations were neither warranties nor representations that the actual taxes would match

the projections).

Further, any allegation based on the fact that the November Financial Projections turned

out to be wrong is "fraud by hindsight" and cannot survive a motion to dismiss. *Landesbank

Baden-Wurttemberg v. Goldman, Sachs & Co.,* 821 F. Supp. 2d 616, 623 (S.D.N.Y. 2011), *aff'd*,

478 Fed. Appx. 679 (2d Cir. 2012); *Epirus Capital Mgt., LLC v. Citigroup Inc.*, Civ. 09 No.

2594 (SHS), 2010 WL 1779348, at *5 (S.D.N.Y. Apr. 29, 2010) ("[W]hile great clairvoyance

may have predicted the upcoming market difficulties, failure to make such predictions does not constitute fraud.").

But even if Global's claim were not otherwise so weak, Global's allegations and the uncontested record reflect that Global knew about the Debtors' declining EBITDA well before the execution of the APA and the Amended APA. Indeed, Global expressly stated that it was "admittedly aware" of the Debtors' "decline in business." (FAC, ¶ 9.) And, Global cannot dispute that as of the August 22, 2012 hearing that granted Global the bid protections it required, Global knew that the Debtors' EBITDA was "dramatically" declining. (Transcript, 10:22.) Further, Global admitted to accepting the risk that this decline would continue following execution of the APA. (*Id.* at 48:8–16.) Finally, with respect to capital expenditures, Global was aware that because of "decreasing EBITDA performance, [the Debtors] haven't had the capital to reinvest into CAPEX into the business." (*Id.* at 12:14–17.) Thus, even if Global could properly allege that the November Financial Projections were false and that Global knew they were false, Global was fully aware that the Debtors' EBITDA was declining in a material way and thus, a fraud cause of action based on the Debtors' representations to the contrary fails as a matter of law. *Nurnberg v. Hobo Corp.*, 30 A.D.3d 359 (1st Dep't 2006) (dismissing fraudulent concealment action where "plaintiff was provided with voluminous documentation at the time of the transaction" and was aware of the seller's financial struggles).[11] Global had the same financial information as did the Debtors.

---

[11] Moreover, as a sophisticated party, Global cannot argue that it relied blindly on financial information or that it accepted such information at face value, without analysis. Global did not raise any issues with the November Financial Projections when they were filed with the Amended Disclosure Statement, nor did they raise any issues during the Disclosure Statement hearing before the bankruptcy court.

### D. Global Could *Not* Have Been Fraudulently Induced By The Debtors' Alleged Failure To Disclose Events That Postdated The APA

Under a generous reading of the FAC, Global alleges that the Debtors' failure to provide Global with updated financial projections and failure to disclose to Global "the attendant financial collapse in the fourth quarter of 2012 that was known to the Debtors but misrepresented in the Disclosure Statement" constitute fraudulent omissions. (FAC, ¶¶ 11, 17, 42, 45.) In addition to all of the foregoing arguments that are fatal to this claim, Global's claim for fraudulent inducement based on these alleged omissions fails because the omissions came after Global executed the APA and agreed to buy the business "as is" and without any financial covenants or EBITDA benchmarks or CapEx requirements. Global could not have been fraudulently induced in July 2012 by the Debtors' alleged failure to disclose facts that occurred, at the earliest, in October 2012. The timing of the alleged omissions makes them immaterial to Global's claim for fraudulent inducement of the APA. *See First Inter-County Bank v. DeFilippis,* 160 A.D.2d 288, 290 (1st Dep't 1990) (in dismissing fraudulent inducement claim, court held "it is impossible that these representations, made after the contract was executed, could have *induced* defendant to enter into the contract") (emphasis in original).

Global's claim for fraud by omission is even weaker with respect to the Amendment. The Amendment added obligations only to the Debtors (with respect to capital expenditures) and did nothing to further bind Global. (*See generally* Amendment.) As discussed *supra*, Global was already bound under the APA with no contractual escape hatch based on the Debtors' declining EBITDA or "financial collapse" and a specific disclaimer that Global was buying the business "as is". Accepting all of Global's allegations as true, there is no theory under which the alleged omissions were material to either the APA or the Amendment. Thus, Global's claim for fraud in

the inducement predicated on Global's alleged failure to disclose updated projections or declining EBITDA should be dismissed.

### III.    Global's Breach of Contract Claim Fails As A Matter of Law

To plead breach of contract under New York law, a plaintiff must allege: (1) the existence of a valid contract with the defendant; (2) material breach of the contract by the defendant; (3) plaintiff's adequate performance of the contract; and (4) resulting damages. *Harsco Corp.*, 91 F.3d at 345. The "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent, and that the best evidence of what parties to a written agreement intend is what they say in their writing." *Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y.3d 25, 29 (2008) (internal quotation marks omitted); *see also Mass. Mut. Life Ins. Co. v. Thorpe,* 260 A.D.2d 706, 709 (3d Dep't 1999). Where a contract is clear, issues of interpretation are questions of law properly disposed of through a motion for judgment on the pleadings. *See State Bank of India v. Walter E. Heller & Co., Inc.*, 655 F.Supp. 326, 326–27 (S.D.N.Y.1987). Applying these standards, Global cannot state a claim for breach of contract predicated on the Debtors' failure to make a minimum level of CapEx.

### A.    The APA Does Not Impose A Minimum CapEx Amount

Global's breach of contract claim is predicated solely on the Debtors' alleged breach of the "Ordinary Course of Business" provision in the APA, not on any alleged breach of the Amendment. (FAC, ¶¶ 7, 36.) [12] But the "Ordinary Course of Business" provision of the APA, on its face, does not support Global's claim. This provision is contained in Section 5.1(b) of the APA. The Court is requested to review this section. Contrary to Global's representations, Section 5.1 (b), does not in any manner refer to or require the Debtors to make any CapEx. (*See*

---

[12]    Indeed, given that Global's allegations are the Debtors breached their obligations by not making sufficient CapEx from July 2012 through October 2012, and the Amendment was not executed until November 29, 2012, Global's breach of contract claim can *only* be based on the APA.

FAC,¶¶ 31- 37.)  Thus, as a matter of law, Global's breach of contract claim should be dismissed. *See, e.g.*, *State Bank of India*, 655 F.Supp. at 326–27 (dismissing breach of contract claim under Fed. R. Civ. P. 12(c) because contract clearly did not obligate defendant to take specific actions).

The parties' intent is the paramount principle of contract interpretation.  *E.g.*, *Mass. Mut. Life Ins.,* 260 A.D.2d at 709 ("The most fundamental canon of contract interpretation, taking precedence over all others, is that primary attention be given to the purpose of the parties in making the contract.") (citing *In re Herzog*, 301 N.Y. 127, 135 (1950)).  The best evidence of the parties' intent is the plain meaning of the language in the contract itself.  *Innophos, Inc.,* 10 N.Y.3d at 29*; see also, e.g.*, *Crane Co. v. Coltec Indus. Inc.*, 171 F.3d 733, 737 (2d Cir. 1999).  If Global and Legends had intended for the APA to require the Debtors to make a certain level of CapEx, the parties would have added specific language to the contract to that effect.  Indeed, the parties did just that in the Amendment, which, for the first time, required certain CapEx by the Debtors. (Amendment, § 6.)  In this case, the absence of a CapEx requirement in the APA coupled with the presence of such a requirement in the Amendment demonstrates that the parties did not intend to include such a requirement in the APA.

Further, the "Ordinary Course of Business" provision specifically lists the Debtors' obligations under this provision.  Section 5.1 (b) provides in pertinent part that the Debtors may not (A) enter into or terminate any material agreement or transaction other then in the Ordinary Course of Business, (B) transfer, sell, pledge, or encumber, any material Purchase Asset or LRGP Retained Asset other then in the Ordinary Course of Business, (C) with respect to the Purchased Assets and LRGP Retained Assets, settle any suit or litigation or waive any material claims or rights of material value, or (D) fail to pay any undisputed trade obligations in

accordance with its terms.  (APA, § 5.1.)  Nowhere does this provision refer to or mention any

CapEx requirements.  Global does not allege that the Debtors violated any of the actual

provisions of Section 5.1(b)—or any provision of the APA for that matter—and thus, Global's

breach of contract claim fails as a matter of law.

## CONCLUSION

In light of the foregoing, the Debtors respectfully submit that the cause of action for

fraudulent inducement and the cause of action for breach of contract in Global's FAC should be

dismissed pursuant to Fed. R. Civ. P. 12(c).


This 19th day of August, 2013


Respectfully submitted,

/s/ Barry W. Miller

William H. Patrick, III, La. Bar No. 10359
Barry W. Miller, La. Bar No.  09678
Tristan Manthey, La. Bar No. 24539
**Heller, Draper, Patrick & Horn, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
Telephone: (504) 299-3300
Fax: (504) 299-3399


/s/*Andrew K. Glenn*
Andrew K. Glenn (admitted *pro hac vice*)
Olga L. Fuentes-Skinner (admitted *pro hac vice*)
**Kasowitz, Benson, Torres & Friedman LLP**
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (504) 299-3399

*Counsel for*
*Defendants-Counterclaim Plaintiffs-Debtors*

24