ForUNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| In re | : Case No. 12-12013 |
| | : |
| LOUISIANA RIVERBOAT GAMING | : Chapter 11 |
| PARTNERSHIP, *et al.* | : |
| | : Jointly Administered |
| Debtors. | : |

---

| | |
|---|---|
| GLOBAL GAMING LEGENDS, LLC, | : |
| ET AL. | : Adversary No. 13-1007 |
| | : |
| | : CONSOLIDATED WITH |
| v. | : |
| | : Adversary No. 13-1008 |
| | : |
| LEGENDS GAMING OF LOUISIANA-1, LLC, *et al.* | : |
| | : |

JOINT MOTION FOR PROTECTIVE ORDER BY GLOBAL GAMING PARTIES, THE BRANTLEY FIRM AND JOSEPH P. BRANTLEY, IV

Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global Gaming Bossier City, LLC, Global Gaming Solutions, LLC (collectively, "Global"), Brantley & Associates, APLC (the "Brantley Firm") and Joseph P Brantley, IV ("Mr. Brantley")[1] move the Court for an order pursuant to Rules 7026 and 9016 of the Federal Rules of Bankruptcy

---

[1] Mr. Brantley and the Brantley Firm are sometimes collectively referred to as "Brantley".)

Page 1 of 11

Procedure and Rules 26 and 45 of the Federal Rules of Civil Procedure, limiting the scope of the subpoena Legends[2] served on Mr. Brantley, and the market you show the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

1. In early 2011, Global and Debtors began negotiating an asset purchase agreement (the "APA"), under which Global agreed to purchase Debtor's assets, including the Diamond Jacks casino in Bossier City, Louisiana. Section 5.3 of the APA contains closing conditions, one of which requires Global to obtain regulatory approval from the State of Louisiana for Global to operate the casino. To do so, Global engaged the Brantley Firm to represent and advise Global in connection with acquiring such approvals. See Retainer Agreement Letter from Brantley & Associates to Global Gaming Solutions, LLC, dated April 19, 2012 ("Engagement Letter"), attached hereto as Exhibit A to the Declaration Joseph P. Brantley, IV ("Brantley Decl."). The Engagement Letter establishes the scope of the attorney-client relationship, which is limited to representing and advising the "Client" on Louisiana gaming regulatory matters and governmental relations. Id. "Client" is defined as "Global Gaming Solutions, LLC." Id.

2. In addition to the Engagement Letter, the Brantley Firm sent Global a conflict of interest waiver, confirming that Global was aware the Brantley Firm had a separate attorney client relationship with the Legends concerning "other matters." Waiver of Conflict of Interest Letter from Brantley & Associates to Global Gaming Solutions, LLC, dated April 19, 2012 ("Conflict Waiver"), attached hereto as Exhibit B Brantley Decl. Specifically, the Brantley

---

[2] Legends Gaming of Louisiana-1, LLC; Legends Gaming of Louisiana-2, LLC; and Legends Gaming, LLC are referred to herein as "Legends Louisiana Entities". The Louisiana Legends Entities, Legends Gaming of Mississippi, LLC and Legends Gaming of Mississippi RV Park, LLC are referred to herein as "Legends." Legends and Louisiana Riverboat Gaming Partnership are collectively referred to as "Debtors."

Firm asked Global to acknowledge that the Brantley Firm was already representing Legends in connection with its ongoing regulatory obligations as the current and existing operator of the Diamond Jacks casino in Bossier City, Louisiana, and to waive the conflicts of interest that might arise in light of the fact Global was contemplating the acquisition of Legends. Brantley Decl. at 4. The Brantley Firm's representation of Global for purposes of obtaining regulatory approval to assume operations of the Bossier City casino was separate and distinct from the Brantley Firm's representation of Legends in connection with their ongoing regulatory reporting operations. Brantley Decl. at 5. Global and Legends were not jointly represented in connection with Brantley Firm's efforts to obtain regulatory approval for Global. Brantley Decl. at 5.

3. Legends and Global have since executed the APA, Legends subsequently terminated the APA, and Global and Legends have filed the instant consolidated actions against the other in this Court.[3] On August 22, 2013, Legends' counsel served a subpoena on Joseph P. Brantley, IV, requesting, among others, communications and documents between Mr. Brantley and Global that relate to the subject of this litigation. See Subpoena Duces Tecum to Joseph P. Brantley ("Subpoena"), attached hereto as Exhibit C to Brantley Decl. The Subpoena calls for the production of privileged attorney-client communications between Global and the Brantley Firm, and specifically, Mr. Brantley. See Subpoena Duces Tecum, Requests 2, 4-8, 12, 13. Consequently, Global has instructed the Brantley Firm to not produce privileged documents to Legends without Global's consent. See Letter from Gordon Arata McCollam Duplantis & Eagan LLP to Brantley & Associates, dated August 26, 2013, attached hereto as Exhibit D to Brantley Decl. Legends has since taken the mistaken position that Legends and

---

[3] For simplicity and efficiency Global will not recite the lengthy history surrounding this action.

Global were jointly represented by the Brantley Firm. Global, however, has an Engagement Letter that in no way indicates or contemplates a joint representation. Moreover, Mr. Brantley, like Global, neither intended, nor believed that the Brantley Firm would jointly represent Global and Legends in connection with Global's bid to obtain regulatory approval. Brantley Decl. at 5; 8.

## LEGAL STANDARD

4. A party seeking a Rule 26(c) protective order prohibiting deposition testimony and document production must establish good cause and a specific need for protection. Landry v. Air Line Pilots Ass'n, 901 F.2d 404, 435 (5th Cir.1990). "Good cause" exists when justice requires the protection of "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Id. (quoting Fed. R. Civ. P. 26(c)). The burden is upon the movant to prove the necessity of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." United States v. Garrett, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (citations omitted). If both of these requirements are proven, the court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense." Fed R. Civ. P. 26(c).

5. A court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(c)(3)(A)(iii). "The attorney-client privilege exists to encourage clients to be candid with their attorneys." Industrial Clearinghouse, Inc. v. Browning, 953 F.2d 1004, 1007 (5th Cir.1992). The attorney-client privilege protects two types of communication: those made by a client to his lawyer for the purposes of obtaining

legal advice and those made by the attorney to the client in the course of giving legal advice. United States v. Mobil Corp., 149 F.R.D. 533, 536 (N.D. Tex. 1993). The burden of substantiating a claim of attorney-client privilege falls upon the party asserting the privilege. Exxon Corp. v. St. Paul Fire & Marine Ins., 903 F.Supp. 1007, 1008 (E.D.La.1995); High Tech Comm'c'ns, Inc. v. Panasonic Co., No. 94-1477, 1995 WL 45847, at *1 (E.D.La. Feb.2, 1995) (citing Hodges, 768 F.2d at 721) (additional citations omitted). "Although the privilege belongs to the client, and only the client may waive it, an attorney may assert the privilege on the client's behalf." Haines v. Liggett Grp., 975 F.2d 81, 90 (3d Cir.1992) (citing McCormick on Evidence § 92 (4th ed.1992)); accord United States v. Juarez, 573 F.2d 267, 276 (5th Cir.1978) (citing Fisher v. United States, 425 U.S. 391, 402 n. 8, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Once a claim of privilege has been established, the burden of proof shifts to the party seeking the privileged communication to prove any applicable exception to the privilege, such as waiver. Perkins v. Gregg County, 891 F. Supp. 361, 363 (E.D.Tex.1997); Texaco, Inc. v. La. Land & Expl., Inc., 805 F. Supp. 385, 387 (M.D.La.1992).

ARGUMENT

A. The Documents and Communications Legends Requests Are Attorney-Client Privileged and Should Be Protected.

6. Legends seeks attorney-client communications between Global and Mr. Brantley, and Mr. Brantley should not be compelled to produce them. A federal court sitting under federal question jurisdiction, like this one, usually applies the federal law of privilege. See Fed. R. Evid. 501; *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir.2005); *In re Combustion, Inc.*, 161 F.R.D. 51, 54 (W.D.La. 1995) (discussing application of federal common law

privilege rule in federal question jurisdiction case). When the case concerns state law claims, however, some courts in this circuit have applied state law privilege. See *In re E2 Communications, Inc.*, No. 02-30574-BJH-11, 2006 WL 6510985, at *3 (Bankr. N.D.Tex. June 15, 2006) ("However, where the evidence sought by a party applies exclusively to state law claims, state privilege law applies, notwithstanding the presence of federal claims in the case). Regardless, federal courts in Louisiana have held that federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege. *Soriano v. Treasure Chest Casino, Inc.*, No. 95–3945, 1996 WL 736962, at *2 (E.D.La. Dec.23, 1996) (federal common law and Louisiana law of privilege are substantially similar).

7. Louisiana Code of Evidence article 506 provides in relevant part that

> [a] client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, . . . when the communication is: (1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

La.Code Evid. art. 506(B).

8. The Fifth Circuit has held that the attorney-client privilege applies only if:

> (1) the asserted holder of the privilege is or sought to become a client;
>
> (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
>
> (4) the privilege has been (a) claimed and (b) not waived by the client.

13-01007 - #82 File 09/13/13 Enter 09/13/13 18:18:04 Main Document Pg 6 of 11

*United States v. Kelly*, 569 F.2d 928 (5th Cir.1978); *In re E2 Communications, Inc.*, 2006 WL 6510985, at *3.

9. Here, Global is a client of Brantley's, as shown in the Engagement letter. See Brantley Decl. at 2. And Legends requests documents and communications between Global and Brantley, virtually all of which directly relate to the legal services Brantley provided to Global. Therefore, to the extent the documents and communications requested are for the purpose of giving legal advice (as all the responsive documents are), the Court should, then, forbid discovery of such privileged documents and communications and limit the scope of Global's subpoena in a protective order.

   B. Global and Legends Were Not Jointly Represented.

10. Global has not waived its attorney-client privilege with Brantley and, likewise, the joint representation exception to the privilege does not apply. Legends and Global were never jointly represented by Brantley, and, as the materials Legends seeks from Brantley are still attorney-client privileged communications, the Court should not compel Mr. Brantley to produce such communications to Legends. While jointly represented clients may not assert attorney-client privilege between them, few, if any courts, however, imply joint representations exist and thus waive the privilege. But of those that do, they are in agreement that courts should not "imply joint representations too readily" and that implied joint representations are determined by the understanding of the parties and the circumstances. See *In Re Teleglobe Communications Corp.*, 493 F.3d 345, 362 (3d Cir. 2007); *Neighborhood Development Collaborative v. Murphy*, 233 F.R.D. 436, 441-42 (D.Ma. 2005);

*Sky Valley Ltd. P'ship v. ATX Sky Valley Ltd.*, 150 F.R.D. 648, 652-53 (N.D.Cal. 1993) (listing factors that may create joint-client relationship).[4]

11. For instance, in *Neighborhood Development Collaborative v. Murphy*, the court relied on separate engagement letters and an affidavit to find that the parties did not have an express joint representation. 233 F.R.D. at 441-442. Even though one of the parties had reason to believe it could assert the joint representation, the court there held that one party could not use its erroneous belief to eviscerate the other party's privilege. *Id.* Accordingly, the court did not imply a joint representation to waive attorney-client privilege. *Id.* That is precisely the scenario the Court faces here -- Global had an unambiguous Engagement Letter with Brantley that contemplated a representation of Global, and Global alone. Brantley Decl. at 2; 5. Mr. Brantley did not believe he was jointly representing Global and Legends. Global did not believe the Brantley Firm was jointly representing Global and Legends. Legends' erroneous beliefs alone should not be sufficient to eviscerate the privilege both Global and Brantley believed they had.

12. Legends can identify no evidence indicating intent to enter into a joint representation. See *Sky Valley*, 150 F.R.D. 642-653 (listing factors, including conduct of parties toward one another, terms of contractual relationship, fiduciary obligations between the parties, communication between the parties, among others). And how could they, when Mr. Brantley himself believed he had separate and distinct representations of Global and Legends. Brantley Decl. at 2; 5; 8. In fact, the Brantley Firm understood that it had separate

---

[4] One case in this circuit discusses implied joint representation and this line of cases. See In re Crescent Resources, LLC, 457 B.R. 506, 523-24 (Bankr. W.D.Tex. 2011) (citing In Re Teleglobe). There, however, the court found joint representation between parent corporation and its subsidiaries due, in part, because the engagement letter for the parent stated that the attorney represented the parent and "any of its subsidiaries or affiliates." Id. at 519.

engagements with Legends and Global, and memorialized such separation and potential conflict in the waiver letter. See Conflict of Interest Waiver Ex. B to Brantley Decl.

13. Further, a joint representation cannot arise through the expectations of one party alone. See *Neighborhood Development Collaborative*, 233 F.R.D. at 441. To do so would allow the mistaken belief of joint representation to infiltrate the protections and privileges afforded to another client. Id. Such position would run contrary to the general policy that joint representations of clients with potentially adverse interests should be undertaken only when subject to very narrow limits. Id.

## CONCLUSION

Wherefore, Global, the Brantley Firm and Mr. Brantley respectfully request that the Court enter a Protective Order such that Legends cannot create its own joint representation and then use it as a sword to pierce the attorney-client privilege between Global and Brantley. Accordingly, Global, the Brantley Firm and Mr. Brantley respectfully request the Court limit Legend's subpoena to non-privileged documents through the issuance of the requested Protective Order.

COUNSEL AND SIGNATORIES TO MOTION ON FOLLOWING PAGES

Respectfully submitted,

GORDON, ARATA, MCCOLLAM,
DUPLANTIS & EAGAN, LLC

By: _____
Louis M. Phillips (La. Bar No. 10505)
Elizabeth A. Spurgeon (La. Bar No. 33455)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Phone: (225) 381-9643
Facsimile: (225) 336-9763
Email: lphillips@gordonarata.com
Email: espurgeon@gordonarata.com

- AND -

Steven W. Copley (La. Bar No. 16869)
Patrick ("Rick") M. Shelby (La. Bar No. 31963)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
E-Mail: SCopley@gordonarata.com
E-Mail: PShelby@gordonarata.com

- AND -

DENTONS US LLP
C. Michael Moore (pro hac vice)
Gene R. Besen (pro hac vice)
2000 McKinney Ave, Suite 1900
Dallas, TX 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910
Email: mike.moore@snrdenton.com
Email: gene.besen@snrdenton.com

Attorneys for Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Solutions, LLC and Global Gaming Bossier City, LLC

- AND -

_____
Joseph P. Brantley, IV
Brantley & Associates, APLC
6513 Perkins Road
Baton Rouge, Louisiana 70808
Telephone: (225) 769-9555
Facsimile: (225) 769-0023 or (225) 769-9222

_____
Joseph P. Brantley, IV, Individually

## CERTIFICATE OF SERVICE

I hereby certify on September 13, 2013 I electronically transmitted the foregoing document to the Clerk of the Court for the U.S. Bankruptcy Court, Western District of Louisiana, using the electronic filing system of the Court. A Notice of Electronic Filing was transmitted to all ECF registrants as authorized by Federal Rule of Civil Procedure 5(b)(2)(E).


/s/ Louis M. Phillips


## CERTIFICATE OF CONFERENCE

I hereby certify that on September 13, 2013 counsel for Global conferred with counsel for Legends in an effort to resolve this dispute. Global does not agree with Legends' position on whether the documents at issue are privileged and therefore the parties could not agree on this Motion.


/s/ Louis M. Phillips