UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 12-12013 |
| | : | |
| LOUISIANA RIVERBOAT GAMING | : | Chapter 11 |
| PARTNERSHIP, *et al.* | : | |
| | : | Jointly Administered |
| DEBTORS | : | |
| | : | |
| GLOBAL GAMING LEGENDS, LLC, | : | Adversary No. 13-01007 |
| *et al.* | : | |
| | : | |
| | : | CONSOLIDATED WITH |
| VERSUS | : | |
| | : | |
| | : | Adversary No. 13-01008 |
| LEGENDS GAMING OF LOUISIANA-1, | : | |
| LLC, *et al.* | : | |
| | : | |

**REPLY IN SUPPORT OF JOINT MOTION FOR PROTECTIVE ORDER**

Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global Gaming Bossier City, LLC , Global Gaming Solutions, LLC (collectively, "Global") submit this Reply in support of their Joint Motion for Protective Order, requesting the Court limit the scope of the subpoena Legends[1] served on Joseph P Brantley, IV ("Mr. Brantley").  Legends and Global did not enter into a joint representation with Mr. Brantley for purposes of getting regulatory approvals.  Instead, they separately engaged him to provide legal advice regarding their respective regulatory concerns--for Global in connection with the necessary approvals to operate the casinos it intended to purchase, and for Legends in connection with its ongoing regulatory obligations relating to the casinos it still owned and operated.  Therefore, communications

---

[1]  Legends Gaming of Louisiana-1, LLC; Legends Gaming of Louisiana-2, LLC; and Legends Gaming, LLC are referred to herein as "Legends Louisiana Entities".  The Louisiana Legends Entities, Legends Gaming of Mississippi, LLC and Legends Gaming of Mississippi RV Park, LLC are referred to herein as "Legends."  Legends and  Louisiana Riverboat Gaming Partnership are collectively referred to as "Debtors."

1

between Mr. Brantley and Global should be protected.

### A. Global and Legends Were Not Jointly Represented.

Legends must prove that it **had** a joint representation with Global before it can be presumed that the attorney-client privilege does not apply. But no where among all the evidence to which Legends cites will the Court find any evidence supporting an express or implied joint representation. Indeed, the evidence shows the opposite of a joint representation: Global and Legends have separate engagement agreements (*see* Engagement Letter, attached to Joint Motion for Protective Order, Exhibit A to Brantley Decl.); Mr. Brantley sent a conflict of interest waiver to Global (*see* Conflict Waiver, attached to Joint Motion for Protective Order, Exhibit B to Brantley Decl.), which would be unnecessary had Global and Legends engaged Mr. Brantley for a common purpose; and Mr. Brantley himself states he believed he represented Global and Legends separately in obtaining regulatory approvals for them (*see* Brantley Decl. at ¶7, attached to Joint Motion for Protective Order). The Conflict Waiver letter sent to Global illustrates this indisputable fact: "Global agrees to waive the conflict of interest, which exists with respect to our representing **Legends and its affiliates in other matters**." *See* Conflict Waiver (emphasis added). Indeed, Mr. Brantley's sworn declaration plainly states: "Global and Legends were not jointly represented in connection with the Firm's efforts to obtain regulatory approval for Global" and "I did not intend or believe that the Firm would jointly represent Global and Legends in connection with Global's efforts to obtain regulatory approval." *See* Brantley Decl. at ¶5 and ¶7. The mere fact that clients are represented at the same time by the same attorney cannot create a joint representation.

*Neighborhood Development* is still instructive--one dissimilar fact, i.e. current representation of a potential client, between that case and here does not make *Neighborhood*

*Development* inapplicable. There, no evidence showed an express joint representation and the court found untenable the following proposition: "that a joint representation of Party A and Party B may somehow arise through the expectations of Party B alone, despite Party A's views." 233 F.R.D. 436, 441. The court also stated that an implied joint representation could occur, should both parties proceed under the misapprehension of a joint representation. *Id.* at 442 n.2. Here, Global entered into an engagement agreement with Mr. Brantley, thus proving it did not misapprehend a joint representation with Legend--nor did Mr. Brantley. *See* Brantley Decl. at ¶5 and ¶7.

While Legends argues that *Neighborhood Development* is inapplicable, it is a case closer in facts than the cases to which Legends cites. *See Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) (determining whether to prevent privileged information of corporation to be discovered by its shareholders); *Brennan's Inc. v. Brennan's Restaurant, Inc.*, 590 F.2d 168 (5th Cir. 1979) (discussing privilege as it relates to conflict of interest of attorney who represented corporate defendant and corporate plaintiff when the corporations were owned by members of the same family and had interlocking boards of directions); *Bohn v. Bohn*, 503 So.2d 467 (La. 1987) (communications of attorney who jointly represented married couple not subject to attorney client privilege); *Hodges v. Southern Farm Bureau*, 433 So.2d 125 (La. 1983) (where attorney had represented both insurer and insured, insured could discover attorneys' correspondence in subsequent suit by insured against insurer).

### B. The Common Interest Exception to the Privilege Does Not Apply.

Legends misunderstands Louisiana's rule of evidence. Article 506(C)(5) of the Louisiana Code of Evidence, which does not apply here, states:

There is no privilege under this article as to a communication:

> (5) which is relevant to a matter of common interest between or among two or more clients if the communication was made by any of them or other representative to a lawyer or his representative retained or consulted in common, **when subsequently offered by one client against the other in a civil action.**

(Emphasis added).

Global has not offered any communications against Legends in this action, and therefore, even if Global and Legends had a common interest, this exception does not apply. In *Excess Insurance Co. v. Saunee*, No. 95-cv-3024, 1996 WL 409224 (E.D. La. July 19, 1996), a case to which Legends cites, the court explained the exception under Article 506(C)(5):

> The obvious implication of this exception is that there does exists a privilege for a communication which is relevant to a matter of common interest between or among two or more clients when *not* subsequently offered by one client against the other in a civil action. This is consistent with the general rule as to "joint client" privileges, which is that they may not be waived by only one of the participating clients. *In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992).

*Excess Insurance Co.*, 1996 WL 409224, at *3 (emphasis in original). Global has not waived the privilege by offering privileged communications into evidence against Legends, and Legends, likewise, cannot waive the privilege for Global merely by suing Global. Nor should Article 506 be so broadly construed, as Legends suggests, so as to allow one party to eviscerate the attorney client privilege, which also promotes the public interest by encouraging full and frank communication between attorneys and their clients. *See Smith v. Kavanaugh, Pierson &* Talley, 513 So.2d 1138, 1142 (La. 1987).

### C. Global Did Not Waive The Privilege By Placing Privileged Communications At Issue.

Global has not waived its right to assert the privilege. Global merely recited the requirements of the APA and elements of the cause of action asserted by Legends. Legends mistakenly asserts that because they are required to show they could close the transaction (including meeting the APA's conditions precedent to closing) to prevail on its anticipatory

4

repudiation claim, Global has "placed at issue" obtaining regulatory approval and waived privilege with Mr. Brantley. The "placing-at-issue" waiver occurs when the privilege holder pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. *Conoco Inc. BOH Brothers Construction Co.*, 191 F.R.D. 107, 110 (W.D. La. 1998). "**The focus is on the privilege holder**, and the sole concern is whether the privilege holder has committed himself to a course of action that will require the disclosure of a privileged communication." *Id.* (emphasis added). Indeed, a litigant's pleading of a claim or defense to which his attorney-client communications are relevant does not by such pleadings alone waive his attorney-client privilege. *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138, 1141 (La. 1987). A pleading must **inevitably require** the introduction of a privileged communication at trial to constitute a waiver. *Id.*

As a threshold matter, Legends, not Global, has pled the anticipatory repudiation claim and it **does not require** the introduction of evidence from Global. Legends must prove the elements of its own claim. Global is not required to show anything at trial on Legends' anticipatory repudiation claim, and therefore, has not placed any communication with Mr. Brantley at issue in connection with that claim. Further, Mr. Brantley's privileged communications with Global are of marginal relevance to the ultimate fact issue of whether or not Legends was ready, willing and able to close the transaction. Mr. Brantley's correspondence with regulators, which Global has produced, may have some bearing on the issue, but ultimately the best evidence will come from the regulators themselves. Therefore, Global has not waived its attorney-client privilege with Mr. Brantley.

## CONCLUSION

Wherefore, Global has not waived its attorney-client privilege with Mr. Brantley and no

5

exception to that privilege applies. Consequently, Global and Mr. Brantley respectfully request the Court limit Legend's subpoena to non-privileged documents through the issuance of the requested Protective Order.

Respectfully submitted,

**GORDON, ARATA, MCCOLLAM,
 DUPLANTIS & EAGAN, LLC**

By: **/s/ Louis M. Phillips**
Louis M. Phillips (La. Bar No. 10505)
Elizabeth A. Spurgeon (La. Bar No. 33455)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Phone: (225) 381-9643
Facsimile: (225) 336-9763
Email: lphillips@gordonarata.com
Email: espurgeon@gordonarata.com

- AND -

Patrick ("Rick") M. Shelby (La. Bar No. 31963)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone: (504) 582-1111
E-Mail: SCopley@gordonarata.com
E-Mail: PShelby@gordonarata.com

- AND -

**DENTONS US LLP**
C. Michael Moore (*pro hac* vice)
Gene R. Besen (*pro hac* vice)
2000 McKinney Ave, Suite 1900
Dallas, TX 75201
Telephone: (214) 259-0900
Facsimile: (214) 259-0910
Email: mike.moore@snrdenton.com
Email: gene.besen@snrdenton.com

*Attorneys for Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Solutions, LLC and Global Gaming Bossier City, LLC*

6

13-01007 - #89  File 09/24/13  Enter 09/24/13 20:18:34  Main Document  Pg 6 of 7

## CERTIFICATE OF SERVICE

I hereby certify on September 24, 2013, I electronically transmitted the foregoing document to the Clerk of the Court for the U.S. Bankruptcy Court, Western District of Louisiana, using the electronic filing system of the Court. A Notice of Electronic Filing was transmitted to all ECF registrants as authorized by Federal Rule of Civil Procedure 5(b)(2)(E).

**/s/ Louis M. Phillips**