UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | : | Case No. 12-12013 |
| | : | |
| LOUISIANA RIVERBOAT GAMING | : | Chapter 11 |
|    PARTNERSHIP, *et al.*[1] | : | |
| | : | Jointly Administered |
|    DEBTORS | : | |
| | : | |
| GLOBAL GAMING LEGENDS, LLC, | : | Adversary No. 13-01007 |
|    *et al.* | : | |
| | : | |
| | : | CONSOLIDATED WITH |
| VERSUS | : | |
| | : | |
| | : | Adversary No. 13-01008 |
| LEGENDS GAMING OF LOUISIANA-1, | : | |
|    LLC, *et al.* | : | |
| | : | |

## BRIEF IN SUPPORT OF
## MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF THE JOINT MOTION FOR PROTECTIVE ORDER BY GLOBAL GAMING PARTIES, THE BRANTLEY FIRM AND JOSEPH P. BRANTLEY, IV

Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global Gaming Bossier City, LLC , Global Gaming Solutions, LLC (collectively, "Global") submit this Motion for Reconsideration, requesting the Court reconsider its Order (ECF Doc. No. 106) denying Global and Joseph P. Brantley, IV's *Joint Motion For Protective Order by Global Gaming*

---

[1]    Legends Gaming of Louisiana-1, LLC (12-12014); Legends Gaming of Louisiana-2, LLC (12-12015); Legends Gaming, LLC (12-12017); Legends Gaming of Mississippi, LLC (12-12019); and Legends Gaming of Mississippi RV Park, LLC (12-12020) are being jointly administered with Louisiana Riverboat Gaming Partnership pursuant to order of this Court [Main Case, ECF Doc. No. 6].

*Parties, The Brantley Firm and Joseph P. Brantley, IV* (ECF Doc. No. 82) ("Joint Motion for Protective Order") and limit the scope of the subpoena Legends[2] served on Mr. Brantley.[3]

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) is incorporated into bankruptcy practice by Federal Rule of Bankruptcy Procedure 9023, which provides:

> Except as provided in Rule 3008, Rule 59 F.R.Civ.P. applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment.

The Fifth Circuit has held that a motion for reconsideration may be classified under either Rule 59 or Rule 60, depending upon the time of filing.[4] Because Global's motion for reconsideration was filed with the Court within fourteen days of the Order, Global's motion should be treated as a request to reconsider the Order as a Rule 59(e) motion to "alter or amend the judgment."[5]

A court has considerable discretion to grant or to deny a motion under Rule 59(e).[6] The court must "strike the proper balance between the need for finality and the need to render a just decision on the basis of all the facts."[7] Federal courts in Louisiana hold that a moving party must

---

[2] Legends Gaming of Louisiana-1, LLC; Legends Gaming of Louisiana-2, LLC; and Legends Gaming, LLC are referred to herein as "Legends Louisiana Entities". The Louisiana Legends Entities, Legends Gaming of Mississippi, LLC and Legends Gaming of Mississippi RV Park, LLC are referred to herein as "Legends." Legends and Louisiana Riverboat Gaming Partnership are collectively referred to as "Debtors."

[3] Global incorporates by reference their previous pleadings and arguments, including the background and citations, related to their Motion for Protective Order. *See* Joint Motion for Protective Order ECF Doc. No. 82; Reply in Support of Joint Motion for Protective Order, ECF Doc. No. 89.

[4] *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167,173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc); *Pryor v. U.S. Postal Service*, 769 F.2d 281, 285 (5th Cir. 1985).

[5] *In re Babcock & Wilcox Co.*, 2001 WL 1204074, *1 (E.D. La. 10/11/01) (Vance, J.) (citing *Pryor*, 769 F.2d at 285).

[6] *Id*. (citing *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993); *Lavespere*, 910 F.2d at 173).

[7] *Id*. (citing *Bohlin*, 6 F.3d at 355).

2

satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law.[8]

Here, Global requests that this Court reconsider the Order to correct manifest errors of fact and law, and to prevent manifest injustice.[9] The movant bears the burden of establishing the manifest error in the order and cannot raise arguments which could, and should have, been argued before the order was entered.[10]

## ARGUMENT

### A. Before An Unnecessary Appeal, the Court Should Reconsider Its Decision.

If the Court does not reconsider its decision denying the Joint Motion for Protective Order, Global will seek leave from the district court to appeal the decision. The Court's decision is a discovery order and would be an interlocutory matter that would require Global to seek leave to appeal. *See In re Royce Homes LP*, 466 B.R. 81, 89 (S.D. Tex. 2012) ("The extensive case law holding bankruptcy discovery orders to be interlocutory confirms this result . . . In the bankruptcy context, discovery orders also are generally considered interlocutory and not immediately appealable."). Global requests that the Court take this opportunity to consider the privilege issues advanced by the parties and correct its error to prevent manifest injustice.

Global believes that this Court should reconsider its prior ruling to resolve error caused in great part by argument of Legends' counsel. While the Court was self effacing concerning its

---

[8] *Id.*

[9] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (providing that a motion to alter or amend a judgment pursuant to Rule 59(e) may be based upon correcting manifest errors of law or fact upon which the judgment is based or to prevent manifest injustice).

[10] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003).

3

knowledge of privilege law (Hr'g. Tr. 118:14-17, 126:11-13, 126:19:20, Sept. 25, 2013 ("I don't profess to be an expert on this particular matter")),[11] review of the prior ruling will provide the Court with the opportunity to read the case law cited below, review the declarations attached and reconsider the argument presented in support of the Joint Motion for Protective Order. Such review will make clear the Court's prior error and will allow the Court issue a correct ruling rectifying its mistake. Global does not desire to re-litigate or rehash arguments previously made, but considering the importance of attorney-client privilege and the understandable confusion during the last hearing (as the argument on the Joint Motion for Protective Order came last and after extensive argument on two other important issues), Global requests the Court reconsider its decision that Mr. Brantley jointly represented both Global and Legends.

Global properly sought a Rule 26(c) protective order to prohibit the production of Mr. Brantley's privileged documents and communications and has established good cause and a specific need for protection.[12] The initial burden was upon Global to prove the necessity of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (citations omitted). Global did provide particular and specific facts to support its privilege and the burden was upon Legends' to come forth with its own evidence to refute Global's privilege claim.[13] The only evidence submitted by Legends was a declaration signed by Mr. Brantley that by itself was insufficient to defeat the privilege.

---

[11] For the Court's convenience, a copy of the September 25, 2013 hearing transcript is attached as **Exhibit 1**.

[12] *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir.1990). "Good cause" exists when justice requires the protection of "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*. (quoting Fed. R. Civ. P. 26(c)).

[13] Once a claim of privilege has been established, the burden of proof shifts to the party seeking the privileged communication to prove any applicable exception to the privilege, such as waiver. *Perkins v. Gregg County*, 891 F. Supp. 361, 363 (E.D.Tex.1997); *Texaco, Inc. v. La. Land & Expl., Inc.*, 805 F. Supp. 385, 387 (M.D.La.1992).

The Court can and should take this opportunity to fully consider the issues of privilege, regardless of its experience in that area of the law. Therefore, Global asks this Court to fully consider the issue of joint representation, before requiring Global to engage in lengthy litigation over a motion for leave and the subsequent appeal.

### B. Finding A Joint Representation Is A Manifest Error of Law.

Legends' counsel confused the privilege and joint representation arguments at the September 25, 2013 hearing and Global believes that this contributed to the Court wrongly applying the law and committing manifest error. The federal law of privilege applies in a federal question jurisdiction case, like this one. See Fed. R. Evid. 501; *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir.2005); *In re Combustion, Inc.*, 161 F.R.D. 51, 54 (W.D. La. 1995) (discussing application of federal common law privilege rule in federal question jurisdiction case). As explained by the Fifth Circuit in *Garner v. Wolfinbarger*, the federal common law has developed an exception to the attorney-client privilege in facts and circumstances in which the same attorney acts for two or more parties having a common interest. 430 F.2d 1093, 1103 (5th Cir. 1970). The Fifth Circuit also noted that the exception has been applied to partners, makers of mutual wills, joint trustors, and insured and insurer. *Id*. None of those facts and circumstances exists here. Therefore, as a matter of federal common law, there is no common interest privilege established by the Legends' opposition to the request for protective order.

Also, although the Louisiana Code of Evidence does not apply because this Court sits under federal question jurisdiction, Global acknowledges that federal courts in Louisiana have held that federal common law and Louisiana statutory law are materially similar concerning the attorney-client privilege and a discussion of the common interest privilege set forth in the Louisiana evidentiary rules can be instructive. *Soriano v. Treasure Chest Casino, Inc.*, No. 95–

3945, 1996 WL 736962, at *2 (E.D.La. Dec.23, 1996) (federal common law and Louisiana law of privilege are substantially similar). However, resort to the Louisiana statutory law on the issue of the existence of a common interest privilege, for instruction (it is not controlling) shows that Global cannot be denied the attorney client privilege under a common interest allegation. Article 506(C)(5) of the Louisiana Code of Evidence states:

> There is *no privilege* under this article as to a communication:
>
> (5) which is relevant to a matter of *common interest* between or among two or more clients if the communication was made by any of them or other representative to a lawyer or his representative *retained or consulted in common*, *when subsequently offered by one client against the other in a civil action*.

(Emphasis added). The statute is clear. Even if a common interest could exist (which it cannot here), the common interest exception described in Article 506(C)(5) applies **only** in circumstances in which a common interest party offers a communication against the other party in a civil action. Global has not offered any communications against Legends in this action. Therefore, even if Global and Legends had a common interest in a joint representation by Mr. Brantley, which cannot be established as a matter of fact (see below), the Louisiana exception does not apply as a matter of clear statutory law. Here, it is Legends which *desires* to use privileged communications against Global in this litigation, and it is Legends which has determined that it can waive Global's privilege through declaration of intention by litigation counsel. Legends cannot create an exception to the attorney client privilege through its own intention to use documents in litigation, precisely because the privilege is held by Global and Global has not waived the privilege.[14]

---

[14] The attorney–client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Under both Louisiana and federal common law, Legends cannot unilaterally waive Global's privilege by merely arguing that there was a common interest and that it now desires to use such documents against Global. *See Excess Insurance Co. v. Saunee*, No. 95-cv-3024, 1996 WL 409224, at *3 (E.D. La. July 19, 1996) (The implication of Rule 506(C)(5) is "consistent with the general rule as to 'joint client privileges, which is that **they may not be waived by only one of the participating clients**.") (citing *In re Auclair*, 961 F.2d 65, 70 (5th Cir. 1992) (emphasis added)). Moreover, Global fully acknowledged during the argument, consistent with Louisiana Rule of Evidence 506(c)(5), that in the event Global sought to use communications with Mr. Brantley in this proceeding it would be waiving its attorney client privilege as to those statements. Hr'g. Tr. 92:9-22. Such argument acknowledges that Global's communications with Mr. Brantley were privileged and that the parties did not intend to be jointly represented by Mr. Brantley.

Further, the Court should not "imply joint representations too readily," as it appears to have done here.[15] The court in *In re Teleglobe* stated that

> it is important to remember that clients of the same lawyer who share a common interest are *not necessarily co-clients*. Whether individuals have jointly consulted a lawyer or have merely entered concurrent but separate representations is determined by the *understanding of the parties* and the lawyer in *light of the circumstances*.

493 F.3d at 363 (applying the Restatement and common law principles of privilege and providing that the "keys to deciding the scope of a joint representation are the parties' intent and expectations") (emphasis added). Legends' counsel's repeated statements in argument, to the effect that Mr. Brantley's representation of Global is a "textbook example" of common interest or joint representation does not make it so (by the way, which "textbook"?). And Legends' counsel does not point to any federal common law definition of "common interest" or provide

---

[15] *In re Teleglobe Communications Corp.*, 493 F.3d 345, 362 (3d Cir. 2007).

7

insight into the intent of the Louisiana legislature in what "common interest" should be, such that this situation would fall so neatly within making a joint representation determination.

Finally, the understanding of the lawyer, Mr. Brantley was and is clear—there was no joint representation as far as he was concerned when he took on the representation of Global and also as of the date he submitted his declaration in support of his and Global's Joint Motion for Protective Order. There can be no clearer statement of intention and expectation than joining as a moving party for a protective order and asserting therein that there was never a joint representation. This Court simply cannot ignore the unambiguous understanding of both Global and its counsel. To do so would deny Global the right of having its own counsel, and allow the alleged current understanding of litigation counsel for Legends make the determination of whether Global has an attorney client privilege.

For all the posturing before the Court, Legends is submitting smoke and mirrors—a finding of joint representation or a lawyer retained in common must be based on the facts and circumstances and Legends' counsel is unable to identify any argument or explanation of common interest to conclude otherwise. Legends provides the Court with mere case law sound bites, which superficially discuss joint representations, but do not illuminate circumstances in which to make such a finding given the circumstances presented to the Court in connection with Mr. Brantley's representation of Global. A closer read of Legends' cases reveals that the facts and circumstances of those matters, where courts found a joint representation or common interest, are wholly dissimilar to those in this case. *See Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970) (determining whether to prevent privileged information of **corporation** to be discovered by its **shareholders**); *Brennan's Inc. v. Brennan's Restaurant, Inc.*, 590 F.2d 168 (5th Cir. 1979) (discussing privilege as it relates to conflict of interest of attorney who represented

8

*corporate defendant* and *corporate plaintiff* when the corporations were owned by members of the same *family* and had *interlocking boards* of directors); *Bohn v. Bohn*, 503 So.2d 467 (La. 1987) (communications of attorney who jointly represented *married couple* not subject to attorney client privilege); *Hodges v. Southern Farm Bureau*, 433 So.2d 125 (La. 1983) (where attorney had represented both *insurer and insured*, insured could discover attorneys' correspondence in subsequent suit by insured against insurer).

As this Court is aware, this adversary proceeding is not a case between corporation and shareholder, two interrelated corporations, a married couple, or an insurer and insured. Instead, Global and Legends were on opposite sides of a Purchase Agreement, each represented by their own counsel, and each separately engaged Mr. Brantley to provide legal advice regarding their respective regulatory concerns--for Global in connection with the necessary approvals to operate the casinos it intended to purchase, and for Legends in connection with its ongoing regulatory obligations relating to the casinos it still owned and operated. As argued and demonstrated by Global, Mr. Brantley is Global's counsel pursuant to an Engagement Letter dated April 19, 2012 that identified the scope of Mr. Brantley's representation and makes no reference to any joint representation of Legends. Moreover and as set forth in Mr. Brantley's Declaration, Mr. Brantley, like Global, neither intended, nor believed that the Brantley Firm would jointly represent Global and Legends in connection with Global's bid to obtain regulatory approval.[16]

Accordingly, the Court should reconsider its ruling and apply the above law, which instructs the Court to make a fact based inquiry, to not readily imply joint representations, and to not allow one party to unilaterally waive another party's attorney-client privilege. In so doing, the Court should re-review the evidence before it, which unequivocally shows separate

---

[16] See Brantley Decl. at ¶¶ 5 and 8. A copy of Mr. Brantley's Declaration is attached as **Exhibit 2**.

representations and forbid discovery of Mr. Brantley's privileged documents and communications in connection with his representation of Global.

C. **Finding A Joint Representation Is A Manifest Error of Fact.**

There is no evidence before the Court showing an implied or express joint representation. On the contrary, the evidence shows the opposite:

- Global and Legends have separate engagement agreements (*see* Engagement Letter, Exhibit A to Brantley Decl.);

- Mr. Brantley sent a conflict of interest waiver to Global, which states, "Global agrees to waive the conflict of interest, which exists with respect to our representing Legends and its affiliates in *other matters* [NOT IN CONNECTION WITH THE ASSET PURCHASE AGREEMENT]." (*see* Conflict Waiver, Exhibit B to Brantley Decl.) (emphasis added);

- Mr. Brantley sent a conflict of interest waiver to Legends, which informs Legends that Mr. Brantley represents *only Global with respect to the Purchase Agreement*: "my firm has been asked to represent [Global] in connection with their business activities in Louisiana. Specifically, we have been asked to represent *Global* in obtaining necessary regulatory approval and licensing. . . in connection with *Global's proposed acquisition* of the assets and/or membership interests of Legends Gaming, LLC and its subsidiaries." (*see* Legends Conflict Waiver, attached to Debtors' Opposition and Incorporated Memorandum in Response to Joint Motion for Protective Order, ECF Doc. No. 85; also attached hereto as **Exhibit 3**) (emphasis added);

- Mr. Brantley himself plainly states "Global and Legends were not jointly represented in connection with the Firm's efforts to obtain regulatory approval for Global" and "I did not intend or believe that the Firm would jointly represent Global and Legends in connection with Global's efforts to obtain regulatory approval." (*see* Brantley Decl. at ¶5 and ¶7).

The mere fact that clients are represented at the same time by the same attorney cannot create a joint representation. Legends' counsel wrongly asserted otherwise at the hearing: "Mr. Brantley was representing both Legends and both Global in the attempt to have the [Purchase Agreement] and all of its terms and provisions approved by the gaming Board, Louisiana Gaming Board. There's no question about that." Hr'g. Tr. 98:12-16, Sept. 25, 2013. According to the Legends

10

Conflict Waiver and Mr. Brantley's declaration, however, that statement is patently untrue and misleading--Mr. Brantley only represented Global, in connection with Global's obligations under the Purchase Agreement.

Further, the Purchase Agreement also indicates clearly that the parties were separately engaged, and objective reading of the agreement shows that the Court, simply, misread the provision during the hearing. In Section 5.3(c), the parties agreed to "furnish the other Party with such information and reasonable assistance as such other Party and its respective Representatives may *reasonably request* in connection with their preparation of any filings with any Governmental Authorities." *See* Purchase Agreement, Joint Exhibit, ECF No. 98 (emphasis added). The parties went on to agree to have the

> right to *reasonably consult* with the other on, in each case subject to Applicable Laws relating to the exchange of information (including the Gaming Regulations), all the information relating to the other Party and any of its Affiliates that appears in any filing made with, or written materials submitted to, any third Person or Gaming Authority in connection with the Transaction.

*Id.* (emphasis added). If the parties were jointly represented, then, such a provision would be superfluous. Mr. Brantley's declaration also makes clear that he was engaged by Global prior to execution of the APA (*see* Engagement Letter dated April 19, 2012, Exhibit A to Brantley Decl.). Had the parties been jointly represented this provision would be inconsistent with such joint representation. Moreover, the provision itself affirmatively requires "reasonable requests" for information in connection with any gaming authority filings. Such request would be unnecessary if Mr. Brantley were representing both parties simultaneously. Furthermore, requiring Global to provide its attorney-client privileged communications is not "reasonable" or even necessary for Legends to prepare its filings with the Gaming Board. Finally, Global is only required to "reasonably consult" regarding its own "information" provided to the Gaming Board,

11

not ***provide all communications*** relating to the information provided to the Gaming Board. The Purchase Agreement, then, does not itself create a joint representation eviscerating the attorney-client privilege.

Because not one piece of evidence shows the parties were jointly represented by Mr. Brantley, the Court would have to rely on mere argument of Legends' counsel to find otherwise. While an express joint representation agreement is not necessary to create a joint representation, Legends must still point to other *facts and circumstances* that would support a finding of an implied joint representation; a burden Legends has not met.[17] Indeed, Legends has failed to introduce a single piece of evidence supporting its position and Global has not waived its privilege.[18] The Declarations of Mr. Brantley expressly refute a joint representation, and such declarations are the only evidence before the Court. Legends' opposition brief and arguments made by counsel at a hearing cannot, alone, make a joint representation. Consequently, the Court made a manifest error of fact in finding that Mr. Brantley jointly represented Global and Legends.

## CONCLUSION

Wherefore, Global respectfully requests the Court reconsider its previous decision denying their Joint Motion for Protective Order and limit Legend's subpoena to non-privileged documents.

---

[17] Once a claim of privilege has been established, the burden of proof shifts to the party seeking the privileged communication to prove any applicable exception to the privilege, such as waiver. *See Perkins v. Gregg County*, 891 F. Supp. 361, 363 (E.D. Tex. 1997); *Texaco, Inc. v. La. Land & Expl., Inc.*, 805 F Supp. 385, 387 (M.D. La. 1992).

[18] A litigant's pleading of a claim or defense to which his attorney-client communications are relevant does not by such pleadings alone waive his attorney-client privilege. *Smith v. Kavanaugh, Pierson &* Talley, 513 So.2d 1138, 1141 (La. 1987). As argued by Global's counsel at the hearing, Global need not rely on its privileged communications with Mr. Brantley to prove that it was satisfying its obligations to actively pursue gaming approval, rather, "[t]he best evidence of what [Global was] doing vis-à-vis getting a license is Mr. Brantley's communications with the regulators and the regulator's information. And all that information is available today." Hr'g. Tr. 90:15-19, Sept. 25, 2013.

Respectfully submitted,

**GORDON, ARATA, MCCOLLAM,
DUPLANTIS & EAGAN, LLC**

By:  /s/ **Louis M. Phillips**
Louis M. Phillips (La. Bar No. 10505)
Elizabeth A. Spurgeon (La. Bar No. 33455)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Phone: (225) 381-9643
Email: lphillips@gordonarata.com
Email: espurgeon@gordonarata.com

- AND -

Patrick ("Rick") M. Shelby (La. Bar No. 31963)
201 St. Charles Avenue, 40th Floor
New Orleans, Louisiana 70170-4000
Telephone:  (504) 582-1111
E-Mail:  PShelby@gordonarata.com

- AND -

**Dentons US LLP**
C. Michael Moore
Gene R. Besen
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Telephone:  (214) 259-0900
Facsimile:   (214) 259-0910
Email: mike.moore@dentons.com
Email: gene.besen@dentons.com
*Attorneys for Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Solutions, LLC and Global Gaming Bossier City, LLC*

13

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of foregoing pleading was served upon those parties below receiving electronic notification via the Bankruptcy Court's CM/ECF System, on the 12th day of November 2013.

    S. Ault Hootsell on behalf of Intervenor Ad Hoc Group of First Lien Lenders - hootsela@phelps.com, crombiet@phelps.com

    Barry W. Miller on behalf of Plaintiff Legends Gaming of Louisiana-1, LLC - bmiller@hellerdraper.com, rterrebonne@hellerdraper.com, kfritscher@hellerdraper.com

    William H. Patrick on behalf of Plaintiff Legends Gaming of Louisiana-1, LLC wpatrick@hellerdraper.com

November 12, 2013 in Baton Rouge, Louisiana.

                                          **/s/ Louis M. Philips**
                                          Louis M. Phillips (La. Bar No. 10505)