**SO ORDERED.**

**DONE and SIGNED January 10, 2014.**



_____
**STEPHEN V. CALLAWAY**
**UNITED STATES BANKRUPTCY JUDGE**
_____

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NUMBER 12BK-12013-S11 |
| | : | |
| LOUISIANA RIVERBOAT GAMING | : | |
|    PARTNERSHIP, *et al.*¹ | : | |
|     (Debtors) | : | |
| | : | |
| | : | |
| GLOBAL GAMING LEGENDS, LLC, *et al.*² | : | ADVERSARY NUMBER 13AP-1007 |
| | : | (Lead Adversary Proceeding) |
| | : | |
| VERSUS | : | Consolidated With |
| | : | |
| LEGENDS GAMING OF LOUISIANA-1, | : | |
|    LLC, et al. | : | ADVERSARY NUMBER: 13AP-1008 |
| | : | |

### MEMORANDUM RULING

The matter now before the Court concerns a final ruling on the *Emergency Motion to Stay Proceedings Pending District Court Ruling on Plaintiffs' Motion for Withdrawal of the Reference* [Docket # 120] filed by Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global

1

Gaming of Bossier City, LLC, Global Gaming Solutions, LLC (collectively "Global"), and in particular, whether or not the Bankruptcy Court should continue to preside over and allow discovery

---

[1] Legends Gaming of Louisiana-1, LLC (12-12014); Legends Gaming of Louisiana-2, LLC (12-12015); Legends Gaming, LLC (12-12017); Legends Gaming of Mississippi, LLC (12-12019); and Legends Gaming of Mississippi RV Park, LLC (12-12020) are being jointly administered with Louisiana Riverboat Gaming Partnership pursuant to order of this Court [Main Case, P-6]

[2] Plaintiffs are Global Gaming Legends, LLC, Global Gaming Vicksburg, LLC, Global Gaming Bossier City, LLC, purchasers under the APA, and Global Gaming Solutions, LLC (collectively with Gaming Legends, LLC, Global Gaming Vicksburg, LLC, and Global Gaming Bossier City, LLC, "Global"), guarantor under the APA.

---

to proceed pending the District Court's ruling on the Motion for Withdrawal of the Reference. Opposing Global's Motion to Stay are Louisiana Riverboat Gaming Partnership, Legends Gaming, LLC, Legends Gaming of Mississippi-1, LLC, Legends Gaming of Mississippi-2, LLC, Legends Gaming of Mississippi, LLC, as debtors and debtors-in-possession (excluding Legend Gaming of Mississippi RV Park, LLC), (hereafter "Debtors" or "Legends"). For the reasons set forth below, the Court grants a continuation of the stay in the above referenced consolidated adversary proceeding in all respects, including, but not limited to, **the continuation of any discovery herein** pending the District Court's ruling on Global's withdrawal motion.

## PROCEDURAL BACKGROUND

The first of the two above referenced consolidated adversary proceedings, 13AP-1007, was filed by Global on February 4, 2013, and therein Global sought a declaratory judgment against the Debtors for alleged breach of an Asset Purchase Agreement ("APA") and for relief of its contractual obligations thereunder, and a determination that the APA escrow account holding $6.25 million should be terminated and those sums paid to Global by the escrow agent. Shortly thereafter, on February 6, 2013, the Debtors commenced a separate adversary proceeding, 13AP-1008, wherein Debtors sought

relief for alleged breach of contract by Global, damages for said alleged breach, and, additionally, the APA escrow account holding $6.25 million should be terminated and those sums paid to Debtors by the escrow agent.

On March 1, 2013, Wilmington Trust Company, in its capacity as Administrative Agent under a First Lien Credit Agreement with the Debtors, and the *ad hoc* group of lenders under the First Lien Credit Agreement, together with the First Lien Agent filed a Motion to Intervene, which was granted on March 5, 2013 [Docket # 15---13AP-1007]. (This group shall hereafter be referred to as "Interveners").

On March 11, 2013, Debtors filed an Answer and Counterclaim to Global's Complaint [Docket # 20---13AP-1007], and therein sought both a determination that Global breached the APA and for damages for said breach. Debtors' claim for damages are based on state-law causes of action. Shortly thereafter, on March 25, 2013, Global filed a Motion to Dismiss Debtors' Original Complaint and Counterclaim, which was heard and denied on April 12, 2013. The order denying Global's Motion to Dismiss also consolidated the two adversary proceedings.

Immediately following the denial of Global's Motion to Dismiss, several substantive pleadings were filed by both camps, including: (1) Debtors' *First Amended Complaint for Breach of Contract* [Docket # 46] filed on April 19, 2013; (2) Global's *Answer and Counterclaim to First Amended Complaint for Breach of Contract* [Docket # 47] filed on May 3, 2013; (3) Global's *Amended Answer to First Amended Complaint for Breach of Contract* [Docket # 50] filed on May 24, 2013; and Global's *First Amended Complaint* [Docket # 49], which asserted both claims for breach of contract and for fraud.

On August 19, 2013, the Debtors filed a *Motion for Protective Order Precluding Discovery Concerning the Feasability of Debtors' Chapter 11 Plan of Reorganization* [Docket # 68] and a

3

*Motion to Dismiss* Global's breach of contract and fraud claims [Docket # 69]. (The motion to dismiss was heard on September 25, 2013 and the Court dismissed Global's fraud claim, but left Global's breach of contract claims intact). On October 23, 2013, the Debtors and Interveners filed a Joint *Motion for Partial Summary Judgment of Global's Breach of Contract Claim and Feasibility Defense and Motion in Limine Concerning Feasibility* which was noticed to be heard on December 4, 2013, but was never heard due to the Court's granting Global's motion for an interim stay.

On November 14, 2013, Global filed its *Motion for Mandatory and Discretionary Withdrawal of the Reference* [Docket # 118] based on *Stern v. Marshall*, 131 S.Ct. 2594 (2011), together with a memorandum in support thereof [Docket # 119], along with an *Emergency Motion to Stay Proceedings Pending District Court Ruling on Plaintiffs' Motion for Withdrawal of the Reference* [see Docket # 120] which sought therein an interim order to stay proceedings until such time as a hearing on the motion to stay could be held.

The Court granted the interim order to stay the proceedings [Docket # 123] which imposed "an immediate stay of the above referenced consolidated adversary proceeding, including, but not limited to, any responsive pleadings, responses to applicable deadlines, and further proceedings on pending motions and matters.....pending hearing upon the Motion to Stay." On November 19, 2013, a *Joint Motion for Consent Order Setting Briefing and Submission Schedule of Plaintiffs' Motion to Stay Proceedings for Final Ruling by the Court* [Docket # 126] was filed by the Debtors, Global and the Interveners, which was granted on November 20, 2013 [Docket # 129], and which, in addition to providing briefing deadlines, indicated that the matter would be submitted to the Court for a memorandum ruling, and without the need for oral arguments. This order was subsequently amended by another consent order entered on December 11, 2013 [Docket # 138], which extended Global's reply brief due date from December 12, 2013 to December 19, 2013, and which changed the

submission date from December 13, 2013 to December 20, 2013.

## LEGAL ANALYSIS

The original adversary proceeding [13AP-1007] filed on February 4, 2013 by Global sought a declaration from this Court that the APA was breached by the Debtor, and that Global was, therefore, entitled to the APA escrow deposit of $6.25 million. There is no issue or dispute that the bankruptcy court (through the district's court original jurisdiction under 28 U.S.C. §1334 (b) "civil proceedings arising under title 11," and automatic reference by Local District Court Rules to the bankruptcy court) has jurisdiction over the original Global cause of action. There is, also, no issue or dispute that Global's original cause of action was a "core" proceeding under 28 U.S.C. §157 (b)(2) including but not limited to those "core" proceedings listed under (2) (A), (L), (N) and (O); and that those "core" proceedings are pure bankruptcy [non-state law] causes of action, and, therefore, could have been adjudicated and a "final" decision rendered by this Article I. Bankruptcy Court (see jurisprudence cited below, in particular *Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F. 3d 313 (5th Cir. Oct. 1, 2013) ). However, on March 11, 2013, the Debtors filed an Answer and Counterclaim to Global's original complaint and therein sought damages from Global (in addition to the $6.25 million in the APA escrow deposit) for breach of contract based solely on state-law causes of action. (As stated earlier, a separate adversary proceeding [13AP-1008] was commenced by Debtors on February 6, 2013, which was consolidated with Global's adversary proceeding by court order dated April 12, 2013). On November 14, 2013, Global moved to withdraw the reference citing *Stern v. Marshall*, 131 S.Ct. 2594 (2011), *Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F. 3d 313 (5th Cir. Oct. 1, 2013), *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re BP RE, L.P.)*, Nos. 12-51270, 12-51279, 2013 WL 5975030 (5th Cir. Nov. 11, 2013), and *Wellness Int'l Network, Ltd. v.*

5

*Sharif*, 727 F.3d 751 (7th Cir. 2013).

### ***Stern v. Marshall* and 28 U.S.C. § 157(b)(2)(C)**

Under 28 U.S.C. § 157(b)(1), "bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title." Under 28 U.S.C. § 157(b)(2)(A)–(P), bankruptcy judges may hear a variety of "core" proceedings, including, but not limited to, "counterclaims by the estate, against persons filing claims against the estate." (See § 157(b)(2)(C)). In *Stern*, the U. S. Supreme Court ruled that 28 U.S.C. § 157(b)(2)(C) was unconstitutional, in that it gave bankruptcy judges the ability to enter final judgments in state law counterclaims against parties who had filed actions and/or claims against the estate over the objection of a party. (See *Stern*,131 S.Ct. at 2614-14). According to *Stern*, Congress cannot circumvent Article III protections by giving to bankruptcy courts the ability to hear all "core proceedings."

### ***Sharif* (7th Cir. 2013) and *In re BP RE, L.P.* (5th Cir. Nov. 11, 2013)**

As pointed out by Global, the recent interpretations by the Fifth Circuit in *BR RE, L.P.* and the Seventh Circuit in *Sharif* clearly hold that parties cannot, by agreement, give to a bankruptcy court the ability to adjudicate proceedings that require Article III constitutional authority. Global argues that, with respect to core proceedings wherein a state-law causes of action are involved, and where a bankruptcy court is precluded by *Stern* from issuing a final judgment therein, a bankruptcy court is also prohibited from presiding over proceedings incidental thereto, such as, in this case, discovery pending the District Court's determination of a withdrawal of the reference.

Global correctly points out that, thus far, the Seventh Circuit in *Sharif* has been the only

6

circuit court to deal with the question of what role the bankruptcy court should have in a core proceeding involving a state-law cause of action or, as Global puts it, in a "*Stern*-governed" 'core proceeding." The Seventh Circuit distinguishes the statutory authority granted to magistrate judges, and the absence thereof for bankruptcy judges, in this regard. According to the Seventh Circuit, "It is true that magistrate judges often preside over pretrial matters such as discovery, even if the district court ultimately decides the claims for which discovery is sought, but 28 U.S.C. § 636(b)(1)(A) expressly authorizes a district judge to 'designate a magistrate judge to hear and determine any pretrial matter pending before the court,' with certain exceptions and subject to reconsideration by the district judge if 'the magistrate judge's order is clearly erroneous or contrary to law.'" (*Sharif* at 777). The Seventh Circuit goes on to state that "No analogous statutory authorization exists for bankruptcy judges," and, "if the claim is in fact a core proceeding, the only statutorily authorized remedy would be for the district court to withdraw the reference, *see* § 157(d), and then set a new discovery schedule." (*Sharif* at 777).

Debtors argue that Global's interpretation of *Stern* with regard to a bankruptcy court's ability to oversee discovery in a *Stern*-governed core proceeding is incorrect, and that Global's reliance on *Sharif* is misplaced. According to the Debtors, under *Stern*, a bankruptcy court could freely hear discovery matters because discovery orders are not final decisions and because *Stern* "only dealt with the constitutional limits of bankruptcy judges adjudicating and entering final judgments." (Debtors' Opposition Brief—Docket 136---p. 6). The Debtors go on to argue that *Sharif* is distinguishable from the case at bar "because the discovery sanction issued by the bankruptcy court in that case was a default judgment and a final decision because it 'eliminate[d] the possibility of a decision on the merits [and] is final for purposes of appeal." (Debtors' Opposition Brief—Docket 136---p. 6, and *Sharif* at 778).

7

This Court does not agree with Debtors' interpretation of *Stern* and *Sharif* with regard to the ability of a bankruptcy court to preside over discovery matters. First, the fact that *Stern* did not go on to address the role of bankruptcy courts with regard to discovery shouldn't be interpreted to mean that bankruptcy courts should be allowed to oversee same simply because a bankruptcy discovery order is not a final order. The Seventh Circuit in *Sharif* was unambiguous in pointing out that a bankruptcy judge does not have the statutory authority to oversee discovery in what would be a *Stern*-governed core proceeding in a bankruptcy case. As previously stated, the *Sharif* Court points out that while a magistrate judge has the statutory authority via 28 U.S.C. § 636(b)(1)(A) to oversee discovery if a District Court so designates, subject to reconsideration by the District Court, the bankruptcy court does not have statutory authority to do so.

Debtors utilize the district court case of *Dev. Specialists, Inc. V. Orrick, Herrington & Sutcliffe, LLP*, No. 11 CIV. 6337 CM, 2011 WL 6780600, at *4 (S.D.N.Y. Dec. 23, 2011) to argue that, "under certain circumstances" [bankruptcy courts] "can.... and should" continue to allow and monitor discovery, however, this case precedes the circuit case of *Sharif*. While *Sharif* is not controlling on courts in the Fifth Circuit, it is, nonetheless, jurisprudence in with which this Court agrees.

Global argues that the Fifth Circuit case of *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C. (In re PR RE, L.P.)*, 735 F.3d 279 (5th Cir. 2013) is in line with the reasoning in *Sharif*. Even though the nature of the proceeding in *BP RE, L.P.* was a non-core, related-to matter dealing with state-law claims, the bankruptcy court would, nonetheless, be allowed to hear and issue proposed findings of fact and conclusions of law subject to the district court's *de novo* review if the district court elected to refer the matter to the bankruptcy court for that limited purpose. (11 U.S.C.§ 157(c)(1) and *BP RE, L.P.* at 291). Global further contends that, though the Fifth Circuit does not mention what role the

bankruptcy courts could play in a *Stern*-governed "core proceeding," logic dictates that, if the matter had been a core proceeding involving a state-law cause of action, such as in *Sharif*, the Court would have mandated that the district court preside over all matters involving the proceeding, including discovery matters.

According to Global, the Fifth Circuit had to have based its ruling in *BP RE, L.P.* upon the statutory authority granted in § 157(c) to determine the bankruptcy court's authority in the non-core related to proceeding because, otherwise, the distinction that the nature of the proceeding was non-core, related to, or core would have been irrelevant. This Court supports this position and agrees that, if the matter in *BP RE, L.P.* had been a core matter involving a state-law cause of action (such as in *Sharif*, and as Global contends), the Fifth Circuit would have logically required that the district court preside over all aspects of the proceeding, including discovery.

### In the Interests of Efficiency and Judicial Economy, this Litigation Should NOT be Divided Between Different Courts Nor Handled in a Piecemeal Fashion

The *Original Complaint for Declaratory Judgment* filed by Global (13AP-1007) sought a declaration that Debtors breached the APA and that Global should, therefore, be relieved of its contractual obligations thereunder. Global's original complaint was, without question, a core proceeding that could have been presided over by this bankruptcy court. Debtors' counterclaim seeking damages under state law causes of action then introduced, in this Court's opinion, a classic *Stern* situation into these proceedings.

The APA is the heart of this litigation, and the claims for breach of the APA are "pure bankruptcy" causes of action----non state-law, "core proceedings." Indeed, the APA was such an integral part of Debtors' bankruptcy cases that it became both the foundation for and the driving force behind the then sought successful reorganization of the Debtor entities. Once the state-law causes of

9

action were introduced into this litigation via Debtors' subsequent counterclaim, a *Stern* situation was then triggered prompting Global to move to have the reference withdrawn.

It has been argued by the Debtors that the practical approach would be to allow the bankruptcy court preside over discovery issues pending a district court ruling on the withdrawal of the reference. According to the Debtors, allowing a stay of discovery pending Global's withdrawal motion would not save time nor expense and would "further delay the already protracted resolution of this case." It is this Court's opinion, however, a lifting of the stay to allow discovery to reconvene could [and probably would] lead to problems down the line that could have a negative impact on this litigation, not to mention additional costs to the parties.

Global contends that Debtors only wish to have the stay modified to allow discovery to proceed with regard to Debtors' state-law counterclaim, all-the-while seeking to block all of Global's attempts at discovery in connection with Global's claims. To support its position, Global points to specific pleadings filed by the Debtors wherein such efforts to preclude discovery have arguably occurred. For example, Debtors filed a motion for protective order on August 19, 2013 wherein they seek to prevent discovery as it relates to issues of feasibility and financial performance between the period of the execution of the APA and their voluntary withdrawal of the plan. Debtors then sought to have Global's fraud and breach of contract claims extinguished via a motion to dismiss which was also filed on August 19th, immediately following their motion for protective order. [As previously stated, this Court dismissed Global's fraud claim, but left their breach of contract claim intact.] Additionally, just three (3) weeks before Global filed the motion to withdraw the reference, Debtors and Interveners moved for summary judgement on Global's breach of contract claim and argued therein that Global should not be allowed to introduce evidence regarding feasibility or the financial performance of debtors properties and that discovery regarding these issues should cease. Global

contends that Debtors and Interveners desire to have discovery proceed only as it relates to damages, and to block any attempts by Global to pursue discovery on its claims.

The contention that Debtors' [and Interveners'] only desire discovery to proceed as to their claims [and to thwart any attempts by Global to obtain discovery on its claims] is not the main focal point in the determination of whether the stay on discovery should continue. The real issue is whether or not lifting the stay and allowing discovery to proceed would be in the best interest of the parties and the courts, and whether it would promote efficiency and judicial economy. In this Court's opinion, giving a green light to discovery would not only be risky, but could potentially have a negative impact on this litigation. If this Court were to continue to preside over discovery issues pending the District Court's determination of the withdrawal motion, there is a very real possibility that any decision made by the bankruptcy court on Debtors' state-law counterclaim would have to be revisited by the District Court. If anything is for sure, it's that the various parties to these proceedings are quite litigious, and the chances that one party would yell "foul" to the District Court regarding a bankruptcy court discovery ruling are very high. In light of recent ruling by the Fifth Circuit in *BP RE. L.P.*, there is simply too much risk that an error could be made that would not only cost the various parties additional money, but also waste valuable time of both the Bankruptcy and the District Courts.

## CONCLUSION

For all of the foregoing reasons, the *Order Granting Interim Stay of Proceedings* [Docket # 123] is made **FINAL**, and the stay imposed by that order shall **remain in full force and effect** over any responsive pleadings, any responses to applicable deadlines, any further proceedings on any pending motions and matters, and **shall hereby include any and all discovery activity between the various parties** pending a ruling by the District Court on the motion to withdraw the reference. An

Order incorporating the findings herein shall accompany this Memorandum Ruling.